UNITED STATES of America, Appellee,

v.

Francisco Rodriguez CLAUDIO, a/k/a Pito, Defendant, Appellant.

No. 94–1008.

United States Court of Appeals, First Circuit.

Heard Aug. 2, 1994.

Decided Jan. 5, 1995.

James Kousouros, Kew Gardens, NY, for appellant.

Richard A. Friedman, Dept. of Justice, with whom Guillermo Gil, U.S. Atty., Washington, DC, and Rosa E. Rodriguez–Velez, Asst. U.S. Atty., Hato Rey, PR, were on brief for the U.S.

Before SELYA, BOUDIN and STAHL, Circuit Judges.

BOUDIN, Circuit Judge.

On May 6, 1992, Francisco Rodriguez Claudio was indicted, in the last superseding indictment in this case, for conspiring to import heroin, 21 U.S.C. §§ 952(a), 963, and for conspiring to possess it with intent to distribute. 21 U.S.C. §§ 841(a), 846. The indictment, which embraced 23 co-defendants, charged Rodriguez and others with participating in a wide-ranging drug conspiracy to secure heroin from Southeast Asia and distribute it in Puerto Rico and elsewhere in the United States. Various defendants, including Rodriguez, were charged with specific acts of possession, transportation and money laundering.

At the time Rodriguez was indicted in the present case, he was serving a sentence of 105 months as a result of an earlier guilty plea entered in October 1990. In this earlier case, Rodriguez had pled guilty to one count of conspiring to possess heroin with intent to distribute and one count of aiding and abetting an attempt to possess heroin with intent to distribute. 21 U.S.C. §§ 841(a), 846. That case centered around a specific reverse-sting drug transaction in Puerto Rico involving Rodriguez.

Following his indictment in May 1992, Rodriguez moved to dismiss on the ground that the new prosecution was barred under the double jeopardy clause, U.S. Const., amend. V. The government responded with an opposition including a number of exhibits, three of which were filed *ex parte* with a request that they be sealed. Defense counsel was advised of the nature of these sealed documents but not their contents. The sealed documents were two DEA-6 forms recording witness interviews and one transcript containing grand jury testimony of a co-conspirator.

The magistrate judge, to whom the double jeopardy motion was referred, rejected Rodriguez' attempt to secure the sealed materials. Ultimately the magistrate judge filed a report recommending that the double jeopardy claim be disallowed. On review, the district court rejected the double jeopardy defense and upheld the sealing of the three documents. Neither the magistrate judge nor the district court held an evidentiary hearing.

Rodriguez then entered into a conditional plea agreement reserving his right to appeal the rejection of the double jeopardy defense. Fed.R.Crim.P. 11(a)(2). On March 22, 1993, Rodriguez pled guilty to the drug importation conspiracy charge already mentioned and to two substantive counts: one for money laundering, 18 U.S.C. § 1956(a)(2)(A), and the other for a specific act of importation. 21 U.S.C. § 952(a). The remaining charges against Rodriguez, including the distribution conspiracy count under 21 U.S.C. §§ 841(a), 846, were dismissed.

The district court sentenced Rodriguez to concurrent sentences of 112 months on all three counts, these sentences to run concurrently with the previously imposed (and partly served) 105–month sentence in the earlier case that had ended with the guilty plea entered in May 1990. The district court's object was to produce a total punishment of 142 months' imprisonment for the two cases pursuant to guideline provisions discussed below. The district court declined to grant a downward departure or to defer sentencing in order to hear medical experts testify about the condition of Rodriguez' son.

On this appeal, Rodriguez assails the denial of his double jeopardy claim and the sealing of the three documents. He then argues that the sealed items also constituted *Brady* material and were independently required to be disclosed. Finally, Rodriguez says that the district court should have allowed the medical experts to testify in support of the downward departure request and that in any event the sentence was improperly calculated. We address the issues in that order.

1. The double jeopardy issue is more complicated than difficult. On appeal, Rodriguez has narrowed the double jeopardy claim

to an attack on the import conspiracy count in the May 1992 indictment. In substance he claims that the distribution conspiracy charged in the earlier 1990 case was merely an aspect of the larger import conspiracy charged in the present case. Having been prosecuted and convicted of that "single" offense—Rodriguez argues—he cannot now be prosecuted a second time for the same offense. *See North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

The government has, of course, brought the two conspiracy charges under different statutes. The October 1990 plea in the prior case concerned a conspiracy to possess with intent to distribute and the March 1993 plea in this case involved a conspiracy to import. The former charge (but not the latter) requires an intent to distribute as an element of the offense; and the latter (but not the former) requires an intent to import. Thus, the test for separate offenses adopted in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), is satisfied. Put differently, an agreement to import may be punished separately from an agreement to possess with intent to distribute.

In its brief, the government appears to assume that the presence and applicability of two different conspiracy statutes, each requiring an element that the other does not, means that there were two different conspiratorial agreements. That is not necessarily so. There could be only a single agreement which had multiple criminal objectives (*e.g.*, a conspiracy to import *and* distribute heroin). *See Braverman v. United States*, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942). As best we can tell, that is just what Rodriguez is arguing in this case.

■ But even if Rodriguez is right in claiming that there was only a single agreement (and the indications are otherwise), it does not matter. A *single act* may constitute two different offenses for double jeopardy purposes so long as two different statutes were violated and each requires an element that the other does not. This is true of conspiracy, *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981) (single conspiracy embracing drug importation and distribution), as well as other crimes. *E.g., United States v. Franchi–Forlando*, 838 F.2d 585, 589 (1st Cir.1988) (importation of drugs violating both prior approval and disclosure statutes).

This case involves not only multiple convictions but successive prosecutions, yet the *Blockburger* test is generally applied in both situations. *See United States v. Dixon*, —— U.S. ——, ——, 113 S.Ct. 2849, 2859–64, 125 L.Ed.2d 556 (1993). Perhaps in some circumstances there might be collateral estoppel or even due process limitations on a second prosecution for the same act (*e.g.*, where an acquittal occurred in the first case). No such situation is presented here. And under the principles established in *Blockburger* even a single conspiracy can be two different "offenses" for double jeopardy purposes. *Albernaz*, 450 U.S. at 339, 101 S.Ct. at 1142.

Thus, we do not need to consider whether the overlap between the two conspiracies here charged—in time, place, conspirators, objects and the like—is such that there is one unlawful agreement or several. *See United States v. Gomez–Pabon*, 911 F.2d 847 (1st Cir.1989), *cert. denied*, 498 U.S. 1074, 111 S.Ct. 801, 112 L.Ed.2d 862 (1990). In fact, the government has a colorable case that the distribution conspiracy charged in the 1990 indictment was a narrow one and that, apart from the common presence of Rodriguez and one confederate, that drug deal had little to do with the large ring responsible for the Southeast Asia imports. But the evidence is mixed, no evidentiary hearing was ever held, and it is unnecessary to resolve the matter.

■ For the same reason, the sealing of two witness interviews and the grand jury transcript cannot be prejudicial in relation to the double jeopardy defense. The only relevance of the material (so far as double jeopardy is concerned) was its bearing on the question whether there was one conspiracy or several, and the answer does not matter. In fairness to the parties, we note that this case was largely litigated in the district court before *United States v. Dixon*, overruled the

"same conduct" test of *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), and under *Grady* the double jeopardy and any related disclosure claims might look different.

██ 2. Looking to future prosecutions, we think it useful to comment on one aspect of the sealing issue and the government's defense of the procedure it followed. It is true that from time to time, in special circumstances, judges in criminal cases do receive submissions from prosecutors whose contents are not made known to the defense; and in extraordinarily rare cases even the existence of the submission may be undisclosed. *United States v. Innamorati,* 996 F.2d 456, 487 (1st Cir.), *cert. denied,* —— U.S. ——, ——, 114 S.Ct. 409, 459, 126 L.Ed.2d 356, 391 (1993), —— U.S. ——, ——, 114 S.Ct. 1072, 1073, 127 L.Ed.2d 391 (1994). But our traditions make both of these courses presumptively doubtful, and the burden of justification is upon the government.

In this case it is difficult to tell from the materials available to us what justification was provided by the government at the outset; we have only a boilerplate motion to seal which was granted. Thereafter, when the defense sought access to the material, the government's response to the magistrate judge and to the district court was that the witness statements were *Jencks* materials which need not be disclosed before the witness testifies, *see* 18 U.S.C. § 3500; Fed. R.Crim.P. 26.2, and that grand jury materials were protected by Fed.R.Crim.P. 6. The government renews its contention in this court.

The contention is so fundamentally mistaken that we cannot pass by it in silence for fear that the government may think to repeat its approach in a case where it turns out to matter. Subject to various qualifications, the Jencks Act and Rule 6 are perfectly proper objections when the defense is fishing on discovery to obtain information from the government. But this is an instance in which the government was seeking affirmatively to use the sealed information in court as evidence, to obtain a ruling from the magistrate judge and the district court on the merits of the double jeopardy issue.

Rodriguez' position on appeal—that the government can *never* affirmatively use information in court *and* withhold it from the defense—may overstate the matter; but not by much. To be sure, sealed submissions sometimes have to occur in situations where the government seeks a ruling that certain information it is withholding should not be disclosed because, for example, it is claimed to be irrelevant or privileged or outside the scope of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Even then, the courts customarily insist on a particularized showing of substantial cause (*e.g.,* state secret, danger to an ongoing investigation). *See Innamorati,* 996 F.2d at 487 (citing cases).

The notion that the government can have a defendant's defense dismissed based on government evidence that the defendant is not allowed to see goes even further than the withholding of irrelevant or privileged information. And the government's asserted reasons here do not even begin to approach a justification for such an action. *Jencks* material is disclosed routinely after a witness testifies; and grand jury testimony can be made available under Rule 6 based on all kinds of circumstances. The idea that general safeguards against wide-ranging discovery like the Jencks Act and Rule 6 would be sufficient to justify a conviction on secret evidence is patently absurd.

The government cites us to the alleged "flat preclusion" of the Jencks Act, which states that no report by a government witness or prospective witness in a criminal case "shall be the subject of subpena, discovery or inspection" until the witness has testified on direct at trial. 18 U.S.C. § 3500. But even the barest consideration of this statute makes it apparent that it is a shield against premature discovery efforts. *See Jencks v. United States,* 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957). It is not a license for the government to *use* such statements as evidence in court and then deny the defense access to them.

Of course, a particular piece of evidence contained in a *Jencks* statement or in grand jury testimony might itself be protected on

independent grounds that are far more compelling. But we need not try to imagine in this case what grounds might be so compelling as to allow the government to use evidence in court but withhold it from the defense. Nothing in the government's brief so much as hints that it has any justifications beyond its boilerplate Jencks Act and Rule 6 assertions.

■ 3. We turn now to Rodriguez' claim of a *Brady* violation. Rodriguez now has access to one of the documents previously sealed—a DEA debriefing of co-defendant Martinez on April 6, 1992—which contains Martinez' assertion that Rodriguez provided $150,000 for the purchase of cocaine in Hong Kong. Although the date of the money transfer is not stated, surrounding dates indicate that it occurred sometime during March 1990 and at least some days before April 4, 1990, when Martinez traveled to Hong Kong to purchase drugs. One of the overt acts charged against Rodriguez in aid of the import conspiracy count was that on or about March 1990, he provided $150,000 to Martinez in Puerto Rico to finance drug purchases for import.

In connection with the plea agreement and its Rule 11 proffer, the government twice asserted that the $150,000 transfer by Rodriguez occurred on April 7, 1990. On appeal, Rodriguez asserts that the debriefing report, as well as other government evidence, confirm that Martinez left for Hong Kong on April 4. Since such evidence contradicted the government's plea-related assertions that the money transfer occurred in Puerto Rico on April 7, it had to be turned over under the *Brady* doctrine.

The government assumes *arguendo* that *Brady* might apply where a withholding of exculpatory information actually causes a guilty plea, see *Miller v. Angliker*, 848 F.2d 1312 (2d Cir.) *cert. denied*, 488 U.S. 890, 109 S.Ct. 224, 102 L.Ed.2d 214 (1988), but says that it has no record that the defense ever requested *Brady* material in the district court. Rodriguez says that the failure to make such a request is not conclusive. See *Ouimette v. Moran*, 942 F.2d 1, 9 n. 6 (1st Cir.1991). We see no reason to explore these interesting subjects since, as the government

also points out, the discrepancy here has no significance.

The government specified in the indictment that Rodriguez transferred the $150,000 in or about March 1990; that this date was correct is strongly suggested by the Martinez' debriefing and is not contradicted by any evidence we have seen. The government cannot explain how the April 7 date crept into the proceedings, but it was apparently an error and would have been so explained in the district court, had Rodriguez complained about the discrepancy between the indictment and the proffer. So explained, the discrepancy would not have given Rodriguez any reason to alter his plea.

■ Tersely, Rodriguez' brief asserts that the April 6, 1992, report debriefing Martinez was *Brady* material for a quite different reason. In the report, Martinez is reported (by the debriefing agent) as describing a proposed per-unit purchase price for the drugs in an amount that Rodriguez now says is implausible. The government, responding quite briefly, says that the accuracy of the information was "completely immaterial" to the counts of conviction and to Rodriguez' decision to plead guilty.

The misstatement as to the purchase price, if it were a misstatement, might conceivably have furnished some ammunition for cross-examination if Martinez had testified. But there is no reason to think that the government deliberately withheld information: it was apparently never asked to search for *Brady* material and in any case the significance of the drug price figures certainly does not leap off the page. More important, we have been given no reason to think that even some impairment of Martinez' credibility would have undermined what was apparently a substantial case against Rodriguez.

Rodriguez' brief makes no effort to explain why we should think that one piece of potential cross-examination evidence should be deemed likely to undermine the government's case and Rodriguez' inclination to plead. At the very least, Rodriguez' belated *Brady* objection requires some reason to believe that the plea would not have been entered if the price information had been dis-

closed. *Miller*, 848 F.2d at 1321–22. We need not be precise about the required showing since no such showing is even attempted on appeal.

■ 4. Rodriguez' remaining claims relate to his sentence. The first one, which can be disposed of quite simply, is that the district court abused its discretion in refusing to postpone the scheduled sentencing, in order to allow the submission of live medical testimony. Prior to the sentencing Rodriguez had requested a downward departure because of family circumstances, specifically, the need for him to care for a 12 year old son suffering from a neurological condition and a learning disorder. Rodriguez had already submitted some written information about the son's condition, but sought a postponement to offer live medical testimony claimed to be more specific.

The district court rejected the requested postponement, explaining at the sentencing that the court had already carefully considered the requested downward departure and found it not to be warranted. But the court then offered to accept at the hearing a proffer of what the absent expert's medical testimony would be. A proffer was made, but it did not alter the court's refusal to depart downward. On appeal, Rodriguez does not claim that the district court misunderstood the scope of its authority to depart—only that the refusal to hear live testimony was an abuse of discretion.

■ The government tells us that we have no authority to review the refusal to postpone because a refusal to depart is itself largely unreviewable, and that in any case it would have been impermissible to grant a downward departure. A shorter, less debatable, answer is that there is no automatic right to present live testimony at sentencing, *United States v. Tardiff*, 969 F.2d 1283, 1286 (1st Cir.1992), and that testing the value of proposed live testimony by a proffer—especially where a postponement would be involved—accords with both common practice and good sense. Nothing in Rodriguez' brief persuades us that a proffer was an inadequate way to convey the substance of the medical testimony.

■ 5. The remaining sentencing issue is more complicated. Because Rodriguez was already serving a federal sentence for drug offenses, he was sentenced in this case under U.S.S.G. § 5G1.3(c). Under this provision, the court calculates the total punishment that would have been imposed if Rodriguez had been convicted of both the prior offenses and the present ones in one case, and then imposes a new sentence that runs consecutively to the old to the extent needed to impose that total punishment on Rodriguez. *Id.* comment. (n.3). In this case, the district court fixed the total punishment for the prior and present crimes as 142 months, a figure that is not here disputed.

Since Rodriguez was already serving a 105 month sentence, the district court then computed the new sentence with the object of achieving a total period of 142 months' imprisonment. Stating that Rodriguez had been incarcerated for 30 months under the old sentence, the court fixed his new sentence at 112 months' imprisonment and imposed it concurrently with the prior 105 month sentence; obviously, the original 30 months and the new 112 months would equal the target of 142 months. On appeal, Rodriguez says for the first time that, at the time of sentencing, he had already served 37 rather than 30 months.

The problem appears to arise because— unknown to the district court—Rodriguez may have been credited on the earlier sentence for seven months served while under arrest and *before* conviction. 18 U.S.C. § 3585(b). On appeal, the government says that the district court's 30–month premise may have been mistaken but that the government is not certain of the facts. The government also argues that the error has been waived by Rodriguez' failure to raise the point in the district court. It adds that Rodriguez can arguably obtain a correction, if his version of the facts is borne out, under Fed.R.Crim.P. 36.

Rule 36 permits the district court to correct at any time "[c]lerical mistakes in judgments ... arising from oversight or omission." The government agrees that the judgment and transcript show that the district court did intend to fix the present sentence

by subtracting time already served by Rodriguez on his prior sentence from the target figure of 142 months. The question whether at the time of sentencing in this case Rodriguez had served 30 or 37 months of his original sentence can probably be answered by resort to Bureau of Prison records. Under these circumstances, we see no reason why Rule 36 should not be available as a remedy. *United States v. Crecelius,* 751 F.Supp. 1035, 1037 (D.R.I.1990), *aff'd,* 946 F.2d 880 (1st Cir.1991) (table).

It is also the more appropriate avenue for relief. Technically, Rodriguez did waive his right to appeal on this issue by failing to raise it below, *United States v. Elwell,* 984 F.2d 1289, 1298 (1st Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2429, 124 L.Ed.2d 650 (1993). Rodriguez does not suggest that plain error occurred; probably the 30–month figure was plausibly based on the date of Rodriguez' original conviction. Even now Rodriguez has not *proved* that there was in fact error. Under these circumstances, we agree with the government that the proper remedy is to affirm without prejudice to Rodriguez' filing of a Rule 36 motion supported by some documentation of the 37 month figure.

*Affirmed.*