Vincent **FERRARA**

v.

**UNITED STATES of America**

**No. CIV.00–11693–MLW.**

United States District Court,
D. Massachusetts.

May 13, 2005.

David Z. Chesnoff, Goodman & Chesnoff, Las Vegas, NV, David A. Nickerson, San Rafael, CA, Martin G. Weinberg, Oteri, Weinberg & Lawson, Boston, MA, for Vincent Ferrara.

James F. Lang, Robert E. Richardson, United States Attorney's Office, Boston, MA, for United States of America.

### MEMORANDUM AND ORDER CONCERNING GOVERNMENT'S MOTION FOR A STAY

WOLF, District Judge.

#### I. SUMMARY

As described in the April 12, 2005 Memorandum and Order, petitioner Vincent Ferrara has proven that he was denied

Due Process when the government violated its clearly established constitutional duty to disclose to Ferrara, before trial, important exculpatory information that directly negated his guilt on charges that Ferrara had ordered his codefendant Pasquale Barone to murder Vincent James Limoli. *See Ferrara v. United States,* 2005 WL 903196 (D.Mass. Apr. 12, 2005). This Memorandum should be read in the context of that decision.

In summary, the government did not disclose that Walter Jordan, the only source of direct evidence on the Limoli murder charges, had told the government at least twice that Barone told him that Ferrara had *not* ordered the Limoli murder. Nor did it disclose the handwritten memorandum of Boston Police Detective Martin Coleman memorializing these statements by Jordan to the lead prosecutor Jeffrey Auerhahn and Coleman. Instead, the government represented that Jordan would testify that Barone claimed that Ferrara had ordered Barone to kill Limoli. Fearing what he asserts would have been a wrongful conviction that would have resulted in a life sentence, Ferrara entered into a binding plea agreement providing for a twenty-two year sentence, as part of a series of linked, binding plea agreements by members of the Patriarca Family of La Cosa Nostra (the "LCN") which provided important benefits to the government. *See United States v. Carrozza,* 807 F.Supp. 156, 159–61 (D.Mass.1992).

As the court wrote in the April 12, 2005 Memorandum and Order:

The government's failure to disclose Jordan's statements that Ferrara had not ordered the Limoli murder utterly undermines the court's confidence in the outcome of Ferrara's case. The court

now seriously doubts that Ferrara ordered Barone to kill Limoli. In any event, if the required disclosures concerning Jordan's statements had been made, there is a reasonable probability that Ferrara would not have pled guilty to the Limoli murder charges, would not have been convicted of them or of any other racketeering act involving murder, and would not have been held responsible for any murders at sentencing. In view of the compelling reasons for the linked, binding plea agreements providing for downward departures for Ferrara and his codefendants, there is also a reasonable probability that the government and Ferrara would have resolved his case by agreeing to a sentence of much less than twenty-two years if the required disclosures concerning Jordan had been made. Therefore, Ferrara is entitled to appropriate, equitable relief.

*Ferrara,* 2005 WL 903196 at *3. The parties agreed that, at this time, the only feasible remedy would be to resentence Ferrara. They disagreed on what the corrected sentence should be.

In the April 12, 2005 Memorandum and Order, the court addressed the major resentencing issues that had been raised in connection with the April 1, 2004 hearing in this case and indicated that Ferrara appeared to be entitled to be resentenced to time-served. The government responded to the April 12, 2005 Memorandum and Order by raising a myriad of additional sentencing issues that it could and should have presented previously. Nevertheless, on May 3, 2005, the court conducted a six-hour resentencing hearing and in a May 13, 2005 Memorandum and Order Concerning Resentencing addressed all of the issues presented.[1] This Memorandum

---

1. In both the April 12, 2005 and May 13, 2005 Memoranda the court found, among other things, that the government had not for sentencing purposes proven by a preponderance

of the credible evidence that Ferrara was responsible for the Limoli murder, or for the murders of Giacomo DiFronzo or Anthony Corlito, which the government argued consti-

should be read in the context of that decision as well.

Ferrara, who has earned all available "good time" credits, has now served the equivalent of a 213–month, or almost eighteen-year, sentence, having been imprisoned for almost sixteen years. For the reasons described in detail in the May 13, 2005 Memorandum and Order Concerning Resentencing, the court concluded that: the government's unconstitutional conduct has already caused Ferrara to serve several more years in prison than the properly calculated advisory Sentencing Guidelines contemplate; the 18 U.S.C. § 3553(a) statutory sentencing factors do not support a sentence greater than time-served; and those factors indicate that even if the 213–month sentence that Ferrara has served were not within or above the Guidelines range, it would be the most reasonable and appropriate sentence to impose. Therefore, on May 13, 2005, the court resentenced Ferrara to time-served.

The government has requested a stay of Ferrara's release pending a possible appeal, which at least as of May 3, 2005 had not been authorized by the Solicitor General. The motion for a stay was briefed and argued on May 3, 2005. For the reasons set forth below, it is being denied. However, the court is ordering that Ferrara's release be delayed until May 19, 2005 to provide the government an opportunity to file a motion for a stay and supporting memorandum in the First Circuit.[2] If it does so by 4:00 p.m. on May 18, 2005, Ferrara's release shall be postponed to May 26, 2005 in order to provide the First Circuit an opportunity to decide whether to grant a further stay. *See Hood v. United States of America,* 2002 WL 31718441; at *2 (D.Minn. Nov. 21, 2002).

## II. ANALYSIS

### A. *The Applicable Standard*

 The standards under Federal Rule of Appellate Procedure 23 apply to the government's motion for a stay. *See United States v. Smith,* 835 F.2d 1048, 1050 (3d Cir.1987); *United States v. Mett,* 41 F.3d 1281, 1282 (9th Cir.1995); *Nickelson v. United States,* 98 F.3d 1342 (6th Cir.1996). That Rule states:

> While a decision ordering the release of a prisoner is under review, the prisoner must—unless the court or judge rendering the decision or the court of appeals or the Supreme Court or a judge or justice of either court orders otherwise—be released on personal recognizance, with or without surety.

*See* Fed. R.App. P. 23(c). As the Supreme Court has written, "Rule 23(c) undoubtedly creates a presumption of release from custody in such cases, but that presumption may be overcome ...." *Hilton v. Braunskill,* 481 U.S. 770, 774, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987). *See also* James S. Liebman & Randy Hertz, *Federal Habeas Corpus Practice and Procedures* § 36.4 at 1478 (3rd ed. 1998).

> The factors regulating the issuance of a stay are ... (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issu-

---

tuted relevant conduct. In the May 13, 2005 Memorandum and Order Concerning Resentencing, at 24–27, the court also found that it would be inequitable, if not unlawful, to determine whether the murder of William Grasso constituted relevant conduct in part because in their plea agreements Ferrara and his codefendants were given immunity for that crime.

**2.** At the May 3, 2005 hearing, the court advised the government to begin preparing to move, if necessary, for a stay pending appeal. *See* May 3, 2005 Tr. at 179.

ance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton,* 481 U.S. at 775, 107 S.Ct. 2113. "If the [government] establishes that there is a risk that the prisoner will pose a danger to the public if released, the court may take that factor into consideration" in deciding whether to release him. *Id.* at 777, 107 S.Ct. 2113. The court may also consider any proven risk of flight and the remaining length of the prisoner's sentence. *Id.* Each of these factors is addressed below.

B. *The Applicant's Showing Concerning Possible Success on the Merits*

■ With regard to the likelihood of success on appeal, the government need not persuade this court that it is likely to be reversed on appeal for granting Ferrara's § 2255 petition. *See Canterbury Liquors & Pantry v. Sullivan,* 999 F.Supp. 144, 150 (D.Mass.1998). Even if the government does not establish a strong likelihood of success on appeal, it may obtain a stay if "it can nonetheless demonstrate a substantial case on the merits ... if the second and fourth factors in the traditional stay analysis militate against release." *Hilton,* 481 U.S. at 778, 107 S.Ct. 2113. *See also Providence Journal Co. v. Federal Bureau of Investigation,* 595 F.2d 889, 890 (1st Cir.1979) ("Where ... denial of a stay will utterly destroy the status quo, irreparably harming appellants, but the granting of a stay will cause relatively slight harm to appellee, appellants need not show an absolute probability of success in order to be entitled to a stay."). Nevertheless, the government has not made the showing required by the first prong of the *Hilton* test.

The government acknowledges that Coleman's memorandum memorializing Jordan's statements that Barone said Ferrara had not ordered the Limoli murder, or at least the information it contained, "should have been disclosed" to Ferrara before the commencement of his trial and subsequent agreement to plead guilty to the Limoli murder charges, among others. Gov. Sentencing Mem. (Docket No. 171) at 1. The government asserts only that there is not a reasonable probability that the disclosure would have resulted in Ferrara's receiving a sentence of less than twenty-two years.

The reasonable probability standard is addressed in *Ferrara,* 2005 WL 903196 at *34–36. In essence, in *Kyles v. Whitley,* 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), the Supreme Court explained the meaning of "reasonable probability" when it wrote:

> *Bagley*'s touchstone of materiality is a "reasonable probability" of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different [result] with the evidence, but whether in its absence he received [a result] worthy of confidence. A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome ..." *United States v. Bagley,* 473 U.S. 667, 678, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

In the April 12, 2005 Memorandum and Order, particularly at *36–46, this court analyzed and explained in detail why the failure to disclose the Coleman memorandum, or the information it contains, utterly undermines its confidence in the outcome of Ferrara's case, a twenty-two year sentence. The government has not since April 12, 2005 presented to this court any reason why that assessment should be reversed.

The government also does not argue, to this court at least, that *Brady v. United*

*States,* 397 U.S. 742, 757, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), does not establish that "misrepresentation or other impermissible conduct by state agents" may render a guilty plea not knowing and voluntary because such misconduct can cause an innocent individual to plead guilty and deprive the court of the information necessary to evaluate whether the offered admission of guilt is reliable, rather than an effort by an innocent individual to avert the more severe consequences of a potential wrongful conviction. The Second Circuit has held that this was "made clear" in *Brady v. United States, supra. Miller v. Angliker,* 848 F.2d 1312, 1320 (2d Cir.1988). Every Circuit that has decided this issue agrees. *See United States v. McCleary,* No. 95–6922, 1997 WL 215525, at *3 (4th Cir. May 1, 1997); *Sanchez v. United States,* 50 F.3d 1448, 1453 (9th Cir.1995); *United States v. Wright,* 43 F.3d 491, 496 (10th Cir.1994); *White v. United States,* 858 F.2d 416, 422 (8th Cir.1988); *Campbell v. Marshall,* 769 F.2d 314, 321 (6th Cir.1985). For the reasons described in detail in *Ferrara,* 2005 WL 903196 at *23–34, this court concurs and finds that Ferrara's is precisely the sort of case contemplated by the Supreme Court in *Brady v. United States, supra.*

■ The government does argue that granting Ferrara relief in this case involves the application of a new constitutional rule of procedure that, pursuant to *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), cannot be applied retroactively to this case on collateral review. This contention too was analyzed carefully in the April 12, 2005 Memorandum and Order. As described in *Ferrara,* 2005 WL 903196 at *22–25, the government's *Teague* argument was waived because the government did not raise it in its many briefs before the court took Ferrara's case under advisement on April 1, 2004. In summary, "the appropriate time for arguing that *Teague*

barred consideration of petitioner's [claim is] in the answer to the habeas petition." *Wilmer v. Johnson,* 30 F.3d 451, 454 (3d Cir.1994). If this is not done, the *Teague* claim may be deemed waived. *Id.* It is equitable to do so in this case. *See Ferrara,* 2005 WL 903196 at *22–25.

Moreover, as explained in *Ferrara,* 2005 WL 903196 at *26–34, Ferrara has not relied on any new rule of constitutional procedure. Rather, he has relied on the well-established rules enunciated in *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) ("the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment") and *Brady v. United States, supra.*

A *Teague* defense was not even raised, let alone successful, in all but one of the reported cases presenting comparable issues. *See McCleary, supra; Sanchez, supra; United States v. Claudio,* 44 F.3d 10, 13 (1st Cir.1995); *Wright, supra; Tate v. Wood,* 963 F.2d 20 (2d Cir.1992). *But see Matthew v. Johnson,* 201 F.3d 353, 358–60 (5th Cir.2000). For the reasons described in *Ferrara,* 2005 WL 903196 at *34, the facts of *Matthew* distinguish it from the instant case in a significant way because, in contrast to Ferrara, "Matthew [did] not challenge the factual basis for his plea." *Matthew,* 201 F.3d at 366. Moreover, with regard to *Teague,* this court respectfully finds that *Matthew* is not rightly reasoned.

Finally, with regard to *Teague:*

Even if finding that Ferrara's guilty plea does not bar a decision on the merits of his claim created a new rule, it would not create a new *constitutional* rule. Deciding that Ferrara may litigate his claims on collateral review does not resolve a constitutional question. Rather, it only decides the scope of the issues that can be litigated pursuant to

28 U.S.C. § 2255. Therefore, *Teague* would not bar Ferrara from benefiting from that rule. *See Teague*, 489 U.S. at 309, 109 S.Ct. 1060 ("Application of *constitutional* rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system.").

*Ferrara*, 2005 WL 903196 at *33 n. 18.

### C. The Showing Concerning Potential Harm to the Applicant

■■■ With regard to the second *Hilton* factor, the government will not be irreparably injured if Ferrara's release is not stayed. The government does not claim that Ferrara will flee if he is released. In any event, there is no basis for finding that Ferrara is a risk of flight. Although in 1989 Ferrara expected that he would soon be indicted, he did not flee. *See United States v. Salemme*, 91 F.Supp.2d 141, 267 (D.Mass.1999). There is no reason to find that he would violate the conditions of his Supervised Release and flee if he is released now.[3]

The court considered the issue of whether Ferrara is likely to be dangerous if released with particular care in fashioning Ferrara's corrected sentence. As the court wrote on April 12, 2005, and reiterated in the May 13, 2005 Memorandum and Order Concerning Resentencing, it " 'would not exercise its discretion to release Ferrara now if it were proven that he is likely to be a danger to the community.' " May 13, 2005 Mem. and Order Re-

garding Resentencing at 46 (quoting *Ferrara*, 2005 WL 903196 at *53). However, "[t]he Court has carefully considered all of the evidence and concludes that this has not been proven." *Id.*[4]

The reasons for this conclusion are described on pages 46–51 of the May 13, 2005 Memorandum and Order Concerning Resentencing. In summary, they include the following.

Prior to his arrest in 1989, Ferrara was a dedicated and dangerous member of the Patriarca Family of the LCN. He has not renounced his membership in the LCN. Thus, there is some risk that Ferrara might commit crimes if he is released. However, with regard to dangerousness, the First Circuit has warned of "the error of lumping defendants together based solely on their alleged Mafia membership." *United States v. Patriarca*, 948 F.2d 789, 794 (1st Cir.1991). *See also Tortora*, 922 F.2d at 888 ("Detention decisions must be made individually and, in the final analysis, must be based on the evidence which is before the court regarding the particular defendant."); *United States v. DiGiacomo*, 746 F.Supp. 1176, 1182 (D.Mass.1990) ("Membership in the Mafia[ ] cannot properly be the end of the inquiry with regard to dangerousness or flight."). In this case, the government has not proven that, if released, Ferrara is likely to resume his involvement with the LCN or otherwise commit crimes.

---

**3.** With regard to pretrial release, surety is usually required to protect only against risk of flight. Indeed, "there is considerable uncertainty as to whether the law would allow [property] to be forfeited if [a defendant] kept his scheduled court dates but violated some other condition of his release by, say, committing a new crime." *United States v. Tortora*, 922 F.2d 880, 887 n. 8 (1st Cir.1990). As it is not even argued that Ferrara will be a risk of

flight, the court is not requiring surety for his release.

**4.** If the issue of dangerousness was presented in the context of possible pretrial detention, the government would have to prove it by clear and convincing evidence. *See* 18 U.S.C. § 3142(f)(2)(B). The government has, however, failed to prove even by a preponderance of the evidence that Ferrara is likely to be dangerous if released now.

The government has Organized Crime informants and has in recent years conducted electronic surveillance directed at members of the remnant of the decimated Patriarca Family. It has presented no evidence from such sources to indicate that Ferrara is seeking or expected to resume active involvement in the LCN.

The court has considered all of the evidence and employed the insight it has developed in dealing with Ferrara over the past fifteen years. Among many other things, it has considered the five hours of recorded prison telephone calls, selected from about fifty hours of recordings, that the government introduced on May 3, 2005. The tone and context of the conversations is important to determining their implications.

Some of Ferrara's calls were to convicted felons, one of whom, John Cincotti, was once a dangerous member of the Patriarca Family. However, the Bureau of Prisons approved Ferrara's calls to these individuals. Ferrara has in prison demonstrated the ability to follow all rules and in one of the recorded conversations said it was both important and "easy" to do so. *See* May 13, 2005 Mem. and Order Concerning Resentencing at 48.

As detailed in the May 13, 2005 Memorandum and Order Concerning Resentencing, at 47–51, the conversations make it clear that Ferrara is no longer well-connected with the remnant of the Patriarca Family. For example, about two weeks after the event, Ferrara did not know that the Boss of the Family, 91-year old "Sonny Boy" Rizzo, had died. He also did not know that Cincotti was released from prison in 1997 and had recently successfully completed his Supervised Release.[5] Similarly, Ferrara evidently does not know the current alleged Boss, Carmen DiNunzio.

Most significantly, the recorded conversations confirm other evidence, dating back to at least 1987, that Ferrara cares deeply about his elderly ailing mother, sister and brother, and his children. *See Carrozza*, 807 F.Supp. at 163–64. He has a strong desire not to be separated from them again.

In sentencing Ferrara in 1992, the court wrote that it believed that Ferrara "truly love[d][his] children" and that it would be "disturbing and difficult" for him to be separated from his family for many years. *Id.* at 164. The recent evidence demonstrates that this prediction was accurate. The court finds that the past almost sixteen years in prison have been hard on Ferrara and have taught him that crime costs him too much. He is, as a graduate of Boston College, intelligent enough, and also disciplined enough, to obey the rules when it is in his interest to do so.

Thus, the court finds that Ferrara is not likely to be dangerous if released now.[6]

---

5. It is clear from the recording that Ferrara and Cincotti were lamenting the quality of prison food when Cincotti, apparently an excellent chef, said, in jest, that he would cook dinner for Ferrara every night. May 13, 2005 Mem. and Order Regarding Resentencing at 50.

6. The court has considered whether to impose home confinement as a condition of Ferrara's Supervised Release during the pendency of a possible appeal of this case. The court does not find that the risk of danger Ferrara presents makes such a condition necessary. In view of the fact that it is not certain whether the government will pursue an appeal and, in any event, how long it would take for an appeal to be resolved, the court has decided that it is also not appropriate to make home confinement a condition of Ferrara's Supervised Release. If, however, the First Circuit finds that home confinement, with or without electronic monitoring, should be a condition of Supervised Release pending possible appeal, the Probation Department has determined that Ferrara's daughter's home, where he will reside at least initially, is suitable for both home confinement and electronic monitoring.

However, since Ferrara's membership in the LCN and conduct before 1989 suggest that there is some risk that Ferrara will pose a danger to the public if released, the court has taken this factor into consideration in deciding whether to grant the requested stay. *See Hilton,* 481 U.S. at 777, 107 S.Ct. 2113.

### D. *The Showing Concerning Harm to Ferrara*

■ As the Supreme Court has recognized, "the interest of the habeas petitioner in release pending appeal [is] always substantial." *Id.* It has been held that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Obviously, the loss of liberty is a much more severe form of irreparable injury. *See, e.g., Short v. United States,* 344 F.2d 549 (D.C.Cir. 1965) (Bazelon, C.J. dissenting).

As explained in the May 13, 2005 Memorandum and Order Concerning Resentencing, the government's misconduct has already caused Ferrara to serve several more years in prison than would have been required if it had not violated his constitutional right to Due Process. If a stay pending appeal is granted, the duration of Ferrara's continued incarceration, which has been found to now be unlawful, is uncertain and may be lengthy. As of May 3, 2005 at least, the Solicitor General had not even authorized an appeal. *See* May 3, 2005 Tr. at 178. Moreover, there are cases in which protective notices of appeal are filed and then abandoned.

Additional time in prison is not in this case needed to serve the interests addressed by any of the § 3553(a) sentencing factors. *See* May 13, 2005 Mem. and Order Concerning Resentencing at 44–53. Ferrara has already served the equivalent of about an eighteen-year sentence, and no

longer period is necessary to deter Ferrara or others who might be tempted to emulate his earlier example. *Id.; see also Hilton,* 481 U.S. at 777, 107 S.Ct. 2113.

However, prolonging Ferrara's incarceration involves some risk of irreparable injury to Ferrara's health and, indeed, life. "The evidence, including the recorded telephone calls, indicates that Ferrara suffers from severe headaches of undiagnosed origin, has had at least one invasive procedure [in prison] to test his heart that did not result in an explanation for his difficulties, and suffers from other undiagnosed ailments." May 13, 2005 Mem. and Order Concerning Resentencing at 45. Ferrara's codefendant, Joseph Russo, who was being punished for murdering Joseph Barboza, among other things, pursuant to his agreement with the government received a sixteen-year sentence. He died before serving all of it. Similarly, Louis Greco and Harry Tameleo, two of the defendants unfairly convicted with Joseph Salvati of murdering Teddy Deegan, died before it was discovered that agents of the Federal Bureau of Investigation had covered up evidence indicating that its informants had testified falsely about the murder. *See United States v. Flemmi,* 195 F.Supp.2d. 243, 251 (D.Mass.2001); *Commonwealth v. Peter Limone,* 2001 WL 30494 (Mass.Super. Jan. 12, 2001); C. Goldberg, *An Innocent Man Goes Free 33 Years After Conviction,* The New York Times, Feb. 2, 2001 at A12; *see also Salemme,* 91 F.Supp.2d. at 180. The evidence is insufficient for the court to determine just how serious Ferrara's medical problems are. However, the prison deaths of Russo, Greco, and Tameleo are reminders that there are risks to prolonging Ferrara's incarceration.

### E. *The Public Interest*

■ With regard to the final *Hilton* factor, in the circumstances of this case the

public interest will be served if Ferrara is released because the courts will be reaffirming that, like other citizens, public officials will not profit from breaking the law. This case involves an obvious and egregious violation of the government's clear constitutional duty to disclose material exculpatory evidence. *See Brady v. Maryland, supra; Kyles v. Whitley, supra.* For twelve years, the government hid Coleman's memorandum, and the information it contained, from Ferrara, Barone, and Raymond J. Patriarca as it sought to have them punished for Limoli's murder in cases before this court. This was part of a pattern of similar misconduct in Ferrara's and other LCN cases. *See Ferrara,* 2005 WL 903196 at *6, 17–18; *Salemme, supra; Flemmi, supra; United States v. Connolly,* 341 F.3d 16 (1st Cir.2003).

That misconduct continued in connection with Ferrara and Barone's § 2255 petitions. Their petitions were not originally based on the information concerning Jordan's statements that Barone had asserted that Ferrara had not ordered the Limoli murder. Rather, they were based on the claim that government misconduct revealed in *Salemme,* 91 F.Supp.2d at 269–89, proved that their motions to suppress the electronic surveillance evidence of a 1989 LCN induction ceremony should not have been denied by this court. *See Ferrara,* 2005 WL 903196 at 18–19. On behalf of the government, Auerhahn opposed the petitions for three years without disclosing that Ferrara and Barone had a more promising claim based on Jordan's statements about the Limoli murder.

After Jordan's evidence came to the attention of federal prosecutor John Durham of Connecticut, he told this court in January 14, 2003 that the government would soon provide the information to Ferrara and Barone. *Ferrara,* 2005 WL 903196 at *19–20. May 13, 2005 Mem. and Order Concerning Resentencing at 16 & n. 7.

The United States Attorney for the District of Massachusetts, Michael Sullivan, decided that his Office would make the disclosures instead. *Ferrara,* 2005 WL 903196 at *20. However, this was not done before Ferrara moved for the disclosure of exculpatory evidence on April 10, 2003. The government's failure to act on its representation to the court contributed to the extension of Ferrara's sentence beyond its lawful limits.

The Supreme Court has recently written that:

> A rule declaring that a "prosecutor may hide, defendant must seek" is not tenable in a system constitutionally bound to accord defendants due process. . . . Prosecutors' dishonest conduct or unwarranted concealment should attract no judicial approbation.

*Banks v. Dretke,* 540 U.S. 668, 696, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004) (internal citations omitted). Where, as here, it has not been proven that Ferrara is likely to be dangerous if released, it is in the public interest to reaffirm that the Supreme Court's warning is not mere rhetoric.

### F. Conclusion

It may be tempting to reason that Ferrara was, at one time, a dangerous member of the LCN and to minimize any conceivable risk, and foreseeable controversy, by prolonging his incarceration. However, as Justice Felix Frankfurter wrote, "A timid judge, like a biased judge, is intrinsically a lawless judge." *Wilkerson v. McCarthy,* 336 U.S. 53, 65, 69 S.Ct. 413, 93 L.Ed. 497 (1949) (Frankfurter, J., concurring). Application of the *Hilton* standard to the facts established by the evidence compels this court to conclude that the government's motion for a stay of Ferrara's release should be denied.

### III. ORDER

In view of the foregoing, it is hereby ORDERED that:

1. The government's Motion to Stay Ferrara's release pending appeal is DENIED.

2. Ferrara shall be released on May 19, 2005, at 10:00 a.m., unless the government by 4:00 p.m. on May 18, 2005 files a motion to stay and supporting memorandum in the Court of Appeals for the First Circuit and files copies of the motion and memorandum in this Court.

3. If the government files a motion to stay and supporting memorandum by 4:00 p.m. on May 18, 2005, Ferrara shall be released on May 26, 2005, at 10:00 a.m., unless the Court of Appeals for the First Circuit otherwise orders.