# United States Court of Appeals
## For the First Circuit

No. 15-1247

UNITED STATES OF AMERICA,

Appellee,

v.

LUIS E. PEDROZA-ORENGO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Lynch, Kayatta, and Barron,
Circuit Judges.

Eleonora C. Marranzini, Research and Writing Specialist, Eric Alexander Vos, Federal Public Defender, and Vivianne M. Marrero, Assistant Federal Public Defender, Supervisor, Appeals Section, on brief for appellant.
Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Rosa Emilia Rodríguez-Vélez, United States Attorney, on brief for appellee.

April 1, 2016

**KAYATTA**, **Circuit Judge**.    After pleading guilty to unlawful firearm possession, Luis Pedroza-Orengo ("Pedroza") was sentenced to a 60-month term of imprisonment.    Pedroza unsuccessfully urged the district court to reconsider, and he now appeals his sentence as procedurally and substantively unreasonable.    Finding that the district court did not abuse its broad sentencing discretion, we affirm.

## I.  Background[1]

Around 4:20 AM on April 20, 2014, Puerto Rico Police Department agents conducting surveillance in an area of San Juan saw a group of people, including Pedroza, exiting a bar in the midst of an argument.    Pedroza was carrying a firearm, which he pointed in the direction of bystanders.    The agents called for backup and, while they waited, they observed Pedroza slam his firearm on the roof of a car, get inside the car, and prepare to leave the scene.    Before Pedroza could depart, backup arrived and the agents stopped and searched the car.    The search turned up a Glock pistol loaded with fifteen rounds of ammunition, as well as an additional high-capacity magazine loaded with twenty-one rounds of ammunition.

---

[1] Because Pedroza pled guilty, we draw our recitation of the facts from the change of plea colloquy and the unchallenged portions of the Presentence Investigation Report.  See United States v. Maguire, 752 F.3d 1, 3 (1st Cir. 2014).

A grand jury charged Pedroza with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).[2] Pedroza pled guilty pursuant to a plea agreement. Under the agreement, the parties agreed to recommend that the district court sentence Pedroza to the low end of the applicable United States Sentencing Guidelines ("Guidelines") range. At the same time, the agreement made clear that ultimately "the sentence [would] be left entirely to the sound discretion of the Court."

The district court accepted Pedroza's guilty plea and ordered the preparation of a Presentence Investigation Report ("PSR"). The PSR determined that Pedroza fell into Criminal History Category III, which, taken with Pedroza's total adjusted offense level of 17,[3] corresponded to a Guidelines sentencing range of 30-37 months' imprisonment. The PSR also noted that a psychological evaluation conducted when Pedroza was eight years old revealed a verbal IQ of 83 and a performance IQ of 67 and indicated "borderline intellectual functioning" accompanied by "specific learning difficulties."

---

[2] Pedroza had previously been convicted for illegal possession of a machine gun under 18 U.S.C. § 922(o). At the time of the instant offense, Pedroza was on supervised release for this prior conviction.

[3] Pedroza's base offense level was 20, see USSG § 2K2.1(a)(4)(B), but this figure was reduced by three levels to account for Pedroza's acceptance of responsibility, see id. § 3E1.1.

In preparation for sentencing, the district court also received a 15-page neuropsychological evaluation prepared by a licensed clinical neuropsychologist. The evaluation placed Pedroza's total IQ at 60, and it placed Pedroza's global intellectual functioning in the "[m]ild intellectually disabled range." The report further noted Pedroza's "chronic" difficulties with "[i]mpulsive behavior," as well as his impaired "ability to self-reflect, learn from mistakes, develop appropriate goals, and adapt to the demands of his environment." The report concluded that these characteristics contributed to Pedroza's "poor judgment" and inadequate "behavioral control" and to the commission of the instant offense. The report did not state that Pedroza failed to comprehend that his offense conduct was wrong, or that Pedroza was compelled in any way to engage in such conduct.

In keeping with the plea agreement, both parties recommended that the district court impose a low-end Guidelines sentence of 30 months. During a lengthy colloquy at the sentencing hearing, Pedroza's counsel emphasized Pedroza's mental condition as justification for the recommended sentence. The district court agreed "that [Pedroza] has an issue" but found that his mental condition "work[ed] in a sense against society" because "[a]n individual with that kind of situation has less acumen to make decisions, correct decisions regarding firearms and firearms use" and so poses "a bigger danger than an individual who has an IQ of

- 4 -

125 with an illegal gun in his hand." Thus rejecting Pedroza's argument that the evidence of Pedroza's mental condition called for a shorter sentence than Pedroza might otherwise receive, the district court turned to the factors that it regarded as determinative. Citing the light sentence Pedroza received for his prior firearms conviction, the dangerousness of Pedroza's offense conduct, and the high incidence of gun-related crime in Puerto Rico, the district court found "no way [Pedroza was] going to walk away . . . with a [G]uideline[s] sentence" and sentenced Pedroza to an upwardly variant 60-month term of imprisonment and three years of supervised release.

Pedroza moved for reconsideration, and the district court denied his motion. Pedroza now appeals,[4] contending that the district court abused its discretion in imposing his sentence.

## II. Analysis

### A. Legal Standards

Appellate review of a criminal sentence proceeds in two steps. We first "ensure that the district court committed no significant procedural error." Gall v. United States, 552 U.S. 38, 51 (2007). If we find no procedural error, we "then consider

---

[4] Both parties agree that because Pedroza was not sentenced in accordance with the parties' recommendations, the waiver of appeal rights in his plea agreement does not bar this appeal. See United States v. Fernández-Cabrera, 625 F.3d 48, 51 (1st Cir. 2010).

the substantive reasonableness of the sentence imposed." Id. Both inquiries proceed under the deferential abuse of discretion standard.[5] Id.

**B.   Procedural Reasonableness**

Pedroza makes three claims of procedural error. We address each in turn.

**1.   Explanation of the Sentence**

Pedroza claims that the district court failed to justify its choice to impose an upwardly variant 60-month sentence. "[F]ailing to adequately explain the chosen sentence--including an explanation for any deviation from the Guidelines range"--is a "significant procedural error." Gall, 552 U.S. at 51. Where, as here, the court "decides that an outside-Guidelines sentence is warranted, [it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Id. at 50. But although "the court ordinarily should identify the main factors upon which

---

[5] Where a defendant raises no objection below, we typically review a sentence for plain error only. United States v. Reyes-Rivera, 812 F.3d 79, 85 (1st Cir. 2016). Although Pedroza claims that he objected to his sentence, the sentencing transcript reveals no objection. If Pedroza is referring to his motion for reconsideration, such after-the-fact motions are insufficient to evade plain-error review. See United States v. Almonte-Reyes, No. 13-1934, 2016 WL 669381, at *2 n.4 (1st Cir. Feb. 18, 2016). Nonetheless, we decline in our discretion to apply a plain-error standard here because the government has failed to request it. See id.

it relies, its statement need not be either lengthy or detailed." United States v. Turbides-Leonardo, 468 F.3d 34, 40 (1st Cir. 2006).

Here, the district court explained its decision to deviate from the Guidelines range of 30-37 months. The district court described Pedroza's offense conduct in detail, emphasizing the fact that Pedroza had "pointed [his] firearm in the direction of bystanders," the fact that Pedroza's Glock pistol was "the most easily convertible gun to automatic mode," and the fact that Pedroza had acted in "[u]ncontrollable, bold fashion in front of police officers." Moreover, the district court highlighted the fact that Pedroza had committed the instant offense within a year of his release from incarceration for a prior firearms offense-- an offense for which Pedroza had received an unrealized "opportunity" for rehabilitation through a "totally lower end [G]uideline[s]" sentence.

The district court also took into account the unique proliferation of gun crimes in Puerto Rico. Given that "the incidence of particular crimes in the relevant community appropriately informs and contextualizes the relevant need for deterrence," we have recognized "the incidence and trend lines of particular types of crime in the affected community" as relevant considerations in sentencing. United States v. Flores-Machicote, 706 F.3d 16, 23 (1st Cir. 2013). Pedroza points to the district

court's statement that Puerto Rico "[doesn't] have the typical heartland cases . . . that justify" Guidelines sentences to suggest that the district court relied exclusively on community-based considerations, rather than "case-specific factors," id. at 24, to justify its variant sentence.[6]  But, as discussed above, the sentencing colloquy included extensive discussion of the offense conduct and of Pedroza's criminal history.  And even when discussing community-based considerations, the district court linked Puerto Rico's problem with gun violence to "individuals like [Pedroza] with guns of this nature."  (Emphases supplied.) In sum, "the claim that [the district court] did not give individualized attention to the sentencing determination is unfounded."  Id.

In a slight twist, Pedroza contends that even if the district court did rely on individualized considerations in sentencing him, it relied on factors that had "already [been] included in the calculation of the [G]uidelines sentencing range" without "articulat[ing] specifically the reasons that [Pedroza's] situation is different from the ordinary situation covered by the

---

[6] Pedroza also contends that the district court erred by referencing the incidence of gun crime in other countries.  Even assuming that such references were improper, however, there is no indication that they were material to the district court's sentencing determination; rather, the record reveals them to have been nothing more than "unnecessary rhetorical flourishes." Flores-Machicote, 706 F.3d at 22.

[G]uidelines calculation." United States v. Zapete-Garcia, 447 F.3d 57, 60 (1st Cir. 2006). Again, however, the court specifically addressed the particular facts of Pedroza's actual offense that distinguished it from a generic instance of unlawful possession: namely, Pedroza's dangerous brandishing of a firearm in a public location, the make of Pedroza's gun, the speed of Pedroza's recidivism, the leniency of Pedroza's prior sentence, and Puerto Rico's distinct problems with crime of this type. In sum, the district court adequately explained the basis for its upwardly variant sentence.

### 2. Consideration of Mitigating Evidence

Failure to consider the sentencing factors enumerated in 18 U.S.C. § 3553(a) is an abuse of discretion. See Gall, 552 U.S. at 51. Pedroza contends that the district court failed to take into account his "history and characteristics," 18 U.S.C. § 3553(a)(1), because the court "refused to consider evidence of [his] mental and cognitive conditions." Pedroza bases this contention on two points: that the district court declined defense counsel's offer to present live testimony from a neuropsychologist, and that the court at one point stated that it was "not willing to consider [Pedroza's mental condition] at the time of sentencing." Neither point survives our review of the sentencing transcript as a whole.

First, regarding defense counsel's proffered live expert testimony, the proffer did not occur until the day of (indeed, after the start of) the sentencing hearing. Of course, had the court wished to do so, it could have opted to postpone or reschedule sentencing to hear the expert testimony. But it was not required to do so. See United States v. Claudio, 44 F.3d 10, 16 (1st Cir. 1995) ("[T]here is no automatic right to present live testimony at sentencing . . . ."). And we cannot say that the district court abused its discretion in declining to grant such a postponement, especially given the absence of any suggestion that the expert's live testimony would contribute anything beyond what the expert had already stated in the detailed written report that had been provided for the district court. See id. In any event, the district court accepted the gist of the expert's conclusion: that Pedroza suffered from, in the words of the district court, "[m]ild mental retardation." The district court rejected, instead, Pedroza's argument that such a diagnosis warranted a low-end sentence.[7]

---

[7] Pedroza also argues that the district court relied on new information in sentencing without providing him the opportunity to challenge it. The only new "information" was the court's disclosure that it had heard the defense's expert testify in other recent cases and had been unimpressed with her conclusions. The court relied on no facts gleaned in any other proceeding, noting only its impression of the expert's testimony. The court pointed to this impression to explain, in part, why it did not feel a need to adjourn sentencing to another day in order to hear the expert testify live. We doubt that such impressions constitute the type

- 10 -

Second, we reject for similar reasons Pedroza's literal, out-of-context reading of the district court's remark that it was "not willing to consider [Pedroza's mental condition] at the time of sentencing." The transcript of the sentencing colloquy contains pages of discussion reflecting the court's explicit consideration of Pedroza's mental condition. In context, and in relevant part, the district court was simply saying that, after expressly considering and discussing the evidence concerning Pedroza's mental condition, it found that any mitigating force to that evidence was undercut by the implications the evidence held for Pedroza's potential for future dangerousness, and it therefore declined to rely on the evidence as a reason to issue the low-end sentence that Pedroza urged. In short, the court clearly considered Pedroza's mental condition as a component of Pedroza's "history and characteristics." 18 U.S.C. § 3553(a)(1). And even though Pedroza was entitled to the court's consideration of the statutory sentencing factors, he was not entitled to any particular

_____

of "factual information on which [a] sentence is based" that must be disclosed prior to sentencing. United States v. Zavala-Martí, 715 F.3d 44, 55 (1st Cir. 2013) (quoting United States v. Rivera-Rodríguez, 489 F.3d 48, 53–54 (1st Cir. 2007)). In any event, given that the district court ultimately voiced no disagreement with the expert's report in this case, disagreeing instead only with the legal import of her diagnosis, Pedroza can point to no way in which he was prejudiced by the lack of opportunity to challenge the district court's impressions of the expert's prior testimony. See Irizarry v. United States, 553 U.S. 708, 716 (2008).

outcome from that consideration. United States v. Carrasco-de-Jesús, 589 F.3d 22, 29 (1st Cir. 2009); see also United States v. Rivera-González, 776 F.3d 45, 50 (1st Cir. 2015) (district court entitled to weigh certain factors "less heavily than [defendant] would have liked"); United States v. Prosperi, 686 F.3d 32, 43 (1st Cir. 2012) ("[A] district court's 'choice of emphasis' when considering relevant factors is not a ground for vacating a sentence." (quoting United States v. Zapata, 589 F.3d 475, 488 (1st Cir. 2009))).

Pedroza responds that even if the district court was not required to give his mental condition mitigating force, the court was not entitled to give it any aggravating force. Pointing to the district court's concern that Pedroza's mental condition left him with diminished "acumen to make decisions, correct decisions regarding firearms and firearms use" and rendered him "a bigger danger than an individual who has an IQ of 125 with an illegal gun in his hand," Pedroza contends that the district court imposed a longer sentence than it would have selected had Pedroza not suffered from any such condition.

A careful reading of the record, however, belies Pedroza's description of the district court's reasoning. We read the sentencing transcript as demonstrating that Pedroza received the same sentence that he would have received had he not submitted the evidence of his mental condition. The pertinent discussion

commenced with Pedroza arguing that the evidence was a mitigating factor. The court rejected that argument, noting that the evidence, when taken together with Pedroza's offense conduct, suggested a possibility of future dangerousness that undercut the mitigating weight of Pedroza's diminished culpability. This was hardly a novel observation. See Penry v. Lynaugh, 492 U.S. 302, 324 (1989), abrogated on other grounds by Atkins v. Virginia, 536 U.S. 304, 321 (2002); cf. U.S.S.G. § 5K2.13 (district court may not allow downward departure on the basis of diminished capacity where certain aspects of the offense or defendant's criminal history indicate a threat to public safety). The court then explained at length the reasons for its upwardly variant sentence, never mentioning Pedroza's mental condition among those reasons and relying instead on Pedroza's offense conduct and criminal history and the conditions in Puerto Rico. In short, we are presented here with a decision not to rely on the evidence of Pedroza's mental condition either way, rather than a decision to use such evidence to justify a longer sentence than would otherwise be imposed. We therefore have no need to express any view on whether and how a sentencing court could rely on such evidence to the defendant's detriment.

### 3. The Statement of Reasons Form

A court imposing a non-Guidelines sentence must state the reasons for the sentence "with specificity in a statement of

reasons form." 18 U.S.C. § 3553(c)(2). Pedroza contends that the district court committed procedural error here by failing to comply with this statutory duty. Although the government submits that the district court did issue a statement of reasons form, a completed form is not part of the record before us. But it is unnecessary for us to resolve this factual dispute because if there was indeed error, it was harmless. Even under an abuse of discretion standard, a sentencing court's failure to submit a statement of reasons form will not cause us to vacate the sentence if, "[g]iven our review of the district court's oral explanation, we believe that the district court would have imposed the same sentence had it filed a written statement of reasons form." United States v. Vázquez-Martínez, 812 F.3d 18, 25 (1st Cir. 2016). In light of the district court's comprehensive explanation of reasons in open court, such is the case here.

## C.   Substantive Reasonableness

Finally, Pedroza argues that his 60-month sentence is substantively unreasonable. "[T]he linchpin of a reasonable sentence is a plausible sentencing rationale and a defensible result." United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008). Because we have already found the district court's sentencing rationale to rest within the range of acceptable discretion, "we limit our review to the question of whether the sentence, in light of the totality of the circumstances, resides within the expansive

universe of reasonable sentences." United States v. King, 741 F.3d 305, 308 (1st Cir. 2014).

While Pedroza's 60-month sentence was twice the length of the 30-month sentence recommended by the parties and nearly two-thirds longer than a high-end Guidelines sentence of 37 months, "no 'extraordinary' circumstances are required to justify a sentence outside the Guidelines range." United States v. Nelson, 793 F.3d 202, 207 (1st Cir. 2015). Recognizing that sentencing represents "'a judgment call' involving an intricate array of factors," Flores-Machicote, 706 F.3d at 21 (quoting Martin, 520 F.3d at 92), we cannot say that Pedroza's 60-month sentence for unlawful firearm possession--while long--is "outside the universe of reasonable sentences for an offense with a statutory maximum of 120 months," United States v. Paulino-Guzman, 807 F.3d 447, 451 (1st Cir. 2015) (citing 18 U.S.C. § 924(a)(2)).

## III. Conclusion

Finding that Pedroza's upwardly variant sentence was neither procedurally nor substantively unreasonable, we affirm that sentence.