# United States Court of Appeals
## For the First Circuit

No. 18-1901

UNITED STATES OF AMERICA,

Appellee,

v.

JOSE ELI MONTALVO-FEBUS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Pedro A. Delgado-Hernández, U.S. District Judge]

Before

Howard, Chief Judge,
Lynch and Thompson, Circuit Judges.

Rafael F. Castro Lang on brief for appellant.
Francisco A. Besosa-Martínez, Assistant United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Rosa Emilia Rodríguez-Vélez, United States Attorney, on brief for appellee.

July 12, 2019

**LYNCH**, **Circuit Judge**.  This is a sentencing appeal.  Jose Eli Montalvo-Febus pleaded guilty to attempted possession of child pornography, 18 U.S.C. §§ 2252A(a)(5)(B), (b)(2), admitting he attempted to take illicit photographs of a naked fourteen-year-old female victim.  In exchange for the guilty plea, the government agreed to dismiss two charges of transportation of this minor with the intent to engage in criminal sexual activity, which carried mandatory minimum sentences of ten years' imprisonment.  Id. § 2423(a).  Montalvo was sentenced to an upwardly variant sentence of eighty-four months of imprisonment, followed by ten years of supervised release.

For the first time on appeal, Montalvo argues that his sentence is procedurally and substantively unreasonable.  Finding no error, we affirm his sentence.

I.

Since Montalvo pleaded guilty, we draw the facts from the plea agreement, the presentence investigation report (PSR), and the sentencing hearing transcript.  See United States v. Colón-Rosario, 921 F.3d 306, 309 (1st Cir. 2019).  Montalvo first met the victim in Salinas, Puerto Rico, around August 2011, and began sending her messages.  The victim told Montalvo that she was thirteen years old, and he told her that "in love there was no age," that he loved her, and that she should not tell her mother

- 2 -

that they were talking to each other. Montalvo also began visiting the victim at her school.

In 2012, Montalvo twice picked the victim up from a friend's house and drove her to a secluded and poorly lit area to engage in sexual activity. On approximately eight other occasions that year, Montalvo picked the victim up from a chapel near her home and drove her to a motel to engage in sexual activity, before driving her home. Montalvo also requested and attempted to take naked photographs of the victim, but she did not permit him to do so.

On October 26, 2012, the victim's family obtained a protective order against Montalvo, which, after an extension was granted, lasted until November 30, 2015. The family had sought the protective order after Montalvo called the victim and sent her text messages asking when she would be "dropping the charges."

On June 16, 2015, Montalvo was indicted in federal district court. On May 10, 2018, a federal indictment was filed in a separate case charging Montalvo with two counts of transportation of a minor with the intent to engage in any criminal sexual activity, in violation of 18 U.S.C. § 2423(a), which covered the same conduct in the 2015 indictment, but with corrected dates for the offenses. On May 15, 2018, the government also filed an information charging Montalvo with one count of attempted possession of child pornography in violation of 18 U.S.C.

§§ 2252A(a)(5)(B) and (b)(2), in connection with Montalvo's attempt to take photographs of the naked victim.

Montalvo pleaded guilty to the attempted possession of child pornography charge. In the plea agreement, the parties agreed that Montalvo's base offense level was eighteen. The plea agreement stipulated to a two-level enhancement because the offense involved the use of a computer or interactive computer service and a three-level reduction for acceptance of responsibility, for a total offense level of seventeen. The parties did not stipulate to a criminal history category. The parties stipulated that Montalvo "may argue for a non-guideline sentence of 60 months, while the Government reserves the right to argue for a non-guideline sentence of up to 108 months of imprisonment, regardless of [Montalvo's] criminal history category."

The PSR calculated a total offense level of seventeen. The PSR stated that Montalvo had three 2010 Puerto Rico state convictions for: possession of a controlled substance (cocaine), carrying and use of firearms without a license, and manufacture, distribution, possession, and use of ammunition. For these three convictions, Montalvo was sentenced to a total of forty-four consecutive years of probation. Montalvo committed the instant offense while on probation for these prior convictions. The PSR stated that Montalvo had a criminal history category of III, so

the applicable guideline range was thirty to thirty-seven months' imprisonment. The maximum term of imprisonment for the offense is ten years. 18 U.S.C. §§ 2252A(a)(5)(B), (b)(2).

The victim stated, as recounted in the PSR, that her "school grades were affected," she "would constantly cry," she thought of "taking [her] life," and she suffered from "[a]nger, fear, anxiety, sadness, guilt, indifference, insomnia, changes, insecurity, uncontrollable crying, concentration difficulties, repetitive memories of crime[,] and depression." She also said that her family "did not expect what happened, as [she] was the girl with the good grades that never went out," that her mother "had to relocate to the United States because she feared for her life," and that the victim also moved to the continental United States when she turned eighteen.

In its description of the offense conduct, the government's sentencing memorandum stated that "the minor female involved in this case was 14 years old and considered herself a naive girl, who barely left her house and was the star of her family with good grades and sports," and that Montalvo's interactions with the minor were "filled with false promises and 'love' illusions." It also stated that during trial preparations, when asked about "love machine" furniture in certain motel room pictures, the victim stated that Montalvo told her "it was for sexual positions and that they would not use it on that occasion

because she was . . . 'hurt,' referring to the fact that she was bleeding after losing her virginity to the 27-year-old defendant."

At the sentencing hearing, defense counsel requested a sixty-month sentence and the government requested a 108-month sentence. The victim read a prepared victim impact statement. The victim stated that because of Montalvo, her "world fell apart," and that at the time, she "didn't understand what [she] had done." She also stated that Montalvo "disgraced [her] before many, many people" and made it seem like she "was the easy girl that would sleep around with anyone." She stated that she "had to take insult[s] from [her] school peers," and "when [she] saw how they were speaking bad about [her] in school, that's when [she] tried to take [her] life the most."

Defense counsel argued that "within [the victim's] own expressions what made her feel the worst were insults from her peers," but did not challenge any of the victim's testimony or the government's sentencing memorandum. Defense counsel conceded that the interactions between Montalvo and the victim were "filled with false promises and love illusions."

The district court agreed with the PSR's guideline calculations. As to the 18 U.S.C. § 3553(a) factors, the district court stated that Montalvo was thirty-three years old, was a resident of Salinas, had five dependents, had completed the twelfth grade, was employed as a diesel mechanic, was in good physical and

mental health, and had a history of substance abuse. The district court also stated that Montalvo had three convictions, that the "instant offense occurred while he was on state probation supervision," and that Montalvo "violated the law with a 14-year-old adolescent female." The district court stated that "[w]ith this background, the Court deems that a non-guideline sentence, as stipulated in the plea agreement, is a sentence that is just and not greater than necessary to promote the objectives of sentencing." The district court sentenced Montalvo to a term of imprisonment of eighty-four months, which the court found "reasonably necessary to fulfill all of the sentencing objectives, including just punishment, deterrence, rehabilitation and positive reintegration to the community." The district court ordered a term of ten years of supervised release to follow imprisonment. The defendant did not object to the procedural or substantive reasonableness of his sentence. The government then moved to dismiss the other charged counts, and the court granted the motion. Montalvo timely appealed.

## II.

"In sentencing appeals, appellate review is bifurcated." United States v. Ruiz-Huertas, 792 F.3d 223, 226 (1st Cir. 2015). "[W]e first determine whether the sentence imposed is procedurally reasonable and then determine whether it is substantively reasonable." Id. (quoting United States v. Clogston, 662 F.3d

588, 590 (1st Cir. 2011)).

A.   Procedural Reasonableness

The government correctly concedes that the waiver-of-appeal provision in the plea agreement does not apply in this case.[1]

We review unpreserved claims of procedural unreasonableness for plain error. United States v. Arroyo-Maldonado, 791 F.3d 193, 197 (1st Cir. 2015).

Montalvo argues for the first time on appeal that the district court committed procedural error by relying on the government's sentencing memorandum, which he claims "made highly prejudicial, unreliable, false factual representations to the Court claiming that [the victim] was a 'naive' young girl whom [Montalvo] had 'hurt['] by 'making her bleed when he deprived her of her virginity.'" Montalvo claims that the court was influenced by the government's so-called misrepresentations because the court

---

[1]   Montalvo's appellate brief states that he does not bring an independent claim of prosecutorial misconduct. Moreover, his argument that the prosecutor engaged in misconduct by attempting to "amend" the plea agreement's waiver-of-appeal provision is belied by the sentencing hearing transcript. At the hearing, both parties sought to "clarify" the scope of the appellate waiver. The government stated that the parties' intent was that if Montalvo "was sentenced within the recommendation, he would be waiving," but defense counsel responded, "we always understood that if he was sentenced to more than 60 months, then he could still appeal." The district court stated, "[t]o the extent [Montalvo] believes he's free to . . . appeal, he should feel free to do so." There is no evidence of misconduct.

stated at the sentencing hearing, "I have the Government's Sentencing Memorandum in front of me," and the government referred to its sentencing memorandum several times during the sentencing hearing.

There was no error here, plain or otherwise. The government's sentencing memorandum did not make any misrepresentations. It simply described the victim's version of the facts. It stated that the victim "<u>considered herself</u> a naive girl," not that she was in fact naive, and that she had <u>reported</u> that Montalvo hurt her by taking her virginity. (Emphasis added.) This is consistent with the victim's statements at the sentencing hearing and in the PSR, described earlier.

Montalvo argues that the government's statements are contradicted by interviews with the victim's junior high school boyfriend, the victim's sister, and a Puerto Rico Police Department officer, which Montalvo says show that the victim was "anything but 'naive.'" Nothing in those reports contradicts the government's representations that the victim considered herself naive and that she stated she had been "hurt" when Montalvo took her virginity. There was no misrepresentation. Further, the defendant chose not to challenge the version of events in the government's sentencing memorandum. "For sentencing purposes, a prosecutor's statement, not adequately challenged by defense counsel who has a full opportunity to respond, may constitute

reliable information" for the district court to consider. United States v. Díaz-Arroyo, 797 F.3d 125, 130 n.3 (1st Cir. 2015).

Montalvo also argues that the district court committed procedural error because the victim's "chief complaint" was in fact the "bad reputation she had at school," and that this was not Montalvo's fault, but rather, the result of the victim's "behavior with her boyfriend at the school and comments she had made to her friends." This challenge also fails. To the extent the district court did credit the victim's statements, it was acting well within its discretion to do so. See United States v. Cintrón-Echautegui, 604 F.3d 1, 6 (1st Cir. 2010) ("[A] sentencing court has wide discretion to decide whether particular evidence is sufficiently reliable to be used at sentencing.").

B.   Substantive Reasonableness

Montalvo's only argument as to substantive unreasonableness is that his sentence was "marred" by procedural error, a premise we have rejected. Beyond that, the facts of this case fully justify the sentence, which "resides within the expansive universe of reasonable sentences." United States v. Pedroza-Orengo, 817 F.3d 829, 837 (1st Cir. 2016) (quoting United States v. King, 741 F.3d 305, 308 (1st Cir. 2014)).

*     *     *

Affirmed.