# United States Court of Appeals
## For the First Circuit

No. 18-1907

UNITED STATES OF AMERICA,

Appellee,

v.

FREDDIE A. FUENTES-MORENO,
a/k/a Tinta, a/k/a Marca,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Thompson, Circuit Judges.

Rafael F. Castro Lang for appellant.
John Alex Romano, Criminal Division, United States Department
of Justice, with whom Rosa Emilia Rodríguez-Vélez, United States
Attorney, Mariana E. Bauzá-Almonte, Assistant United States
Attorney, Chief, Appellate Division, and Thomas F. Klumper,
Assistant United States Attorney, Senior Appellate Counsel, were
on brief, for appellee.

April 1, 2020

**THOMPSON**, **Circuit Judge**. Defendant-Appellant Freddie A. Fuentes-Moreno says the district court abused its discretion in giving him a consecutive 144-month sentence for two robbery convictions, rather than making it concurrent with another sentence he was already serving at the time he was sentenced for the robberies. We disagree and so we affirm.

BACKGROUND

Fuentes's appeal pertains to an offense that occurred in February 2017 but didn't get charged until February 2018. Because Fuentes contests the sentence's consecutive application to a different sentence that he was already set to serve at the time he was charged in 2018, we start by quickly summarizing Fuentes's criminal history.[1]

In 2012, Fuentes was indicted for possession of a firearm in furtherance of a drug trafficking crime. See Complaint, United States v. Freddie A. Fuentes-Moreno, No. 12-CR-093 (CCC) (D. P.R. Feb. 3, 2012), ECF No. 1 ("Case No. 12-093"). He entered into a plea agreement and on December 3, 2012, was sentenced to 60 months incarceration and 5 years supervised release. His supervised release began August 19, 2016.

---

[1] Because this appeal follows a guilty plea, "we glean the relevant facts from the plea agreement, the undisputed sections of the presentence investigation report (PSR), and the transcripts of his change-of-plea and sentencing hearings." United States v. Ubiles-Rosario, 867 F.3d 277, 280 n.2 (1st Cir. 2017) (citing United States v. Lasalle González, 857 F.3d 46, 52 (1st Cir. 2017)).

Less than one year into its term, Fuentes violated his release provisions when on March 1, 2017, he was arrested and indicted for being a prohibited person in possession of a firearm. See Complaint, United States v. Freddie A. Fuentes-Moreno, No. 17-CR-148 (GAG) (D. P.R. Mar. 1, 2017), ECF No. 1 ("Case No. 17-148" or the "March 1 firearm offense"). As a result of the new charge, the court revoked Fuentes's supervised release term from Case No. 12-093 on July 12, 2017 and imposed a 10-month revocation sentence (the "Revocation Sentence"). On the new firearm possession charge, Fuentes entered a straight guilty plea (i.e., sans a plea agreement), and on September 12, 2017, he received a 40 months sentence consecutive to the 10-month revocation imposition.

While serving the 10, Fuentes and three co-defendants were indicted for a couple of earlier criminal romps that had occurred before Fuentes was reincarcerated, namely two robberies that had taken place on February 4, 2017 (the "Humacao Robberies").[2] The first robbery happened in the morning at a gas station in Humacao, Puerto Rico. Alongside his companions, Fuentes, armed with a gun, entered the gas station and demanded money from the gas station attendant. But the employee, protected by a glass enclosure, refused to cooperate and hid. As a result,

---

[2] Approximately one month before the March 1 firearm offense and therefore during the term of supervised release from his 2012 offense.

Fuentes and crew fled with two cellphone chargers and two candy bars. Dissatisfied with their morning spoils, the four co-defendants tried their luck again later in the day at a Humacao supermarket. While one co-defendant remained in the getaway car, Fuentes (still armed) and the others walked into the store and took at gunpoint $1,400 in cash and $800 in merchandise.

In connection with the Humacao Robberies, a grand jury returned a five-count Second Superseding Indictment charging Fuentes and his three co-defendants on February 7, 2018. Fuentes was charged with: 1) two counts of aiding and abetting in interfering with commerce by robbery, in violation of 18 U.S.C. §§ 1951 and 2, (Counts One and Three); 2) two counts of aiding and abetting in carrying, using and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2 (Counts Two and Four); and 3) being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count Five).

Fuentes initially pleaded not guilty, but on June 11, 2018, at a Rule 11 change of plea hearing, he entered into a guilty plea as to Counts One and Three of the Second Superseding Indictment (details found in "the Plea Agreement").[3] As to the

---

[3] In the Plea Agreement, the parties stipulated to a Base Offense Level of 20 for both offenses under U.S Sentencing Guideline (U.S.S.G.) § 2B3.1(a) and a 5-level enhancement for brandishing a

Plea Agreement's sentencing recommendation, Fuentes and the government were in accord: "[t]aking into consideration that Counts Two, Four and Five [would] be dismissed." They "recommend[ed] as to each count of conviction [Counts One and Three] imprisonment sentences of 12 years [144 months], to be served concurrently with each other." Both parties also "reserve[d] the right to recommend at sentencing that the imprisonment sentences imposed in this case be served concurrently to any imprisonment sentence previously imposed on defendant," specifically, the parties reserved the right to request a sentence to run concurrent with the 40 month sentence for the March 1 firearm offense (which to refresh, ran consecutive to the 10 month Revocation Sentence).[4] In the agreement Fuentes expressly acknowledged certain provisions relevant to the present appeal: 1) the sentence was within the sound discretion of the court and the advisory Sentencing Guidelines, and 2) the court was not bound by the parties' Plea Agreement, sentencing calculations and/or

---

firearm under U.S.S.G. § 2B3.1(b)(2)(C). With a two-level enhancement for the grouping of the offenses (U.S.S.G. § 3D1.4(a)) and a 3-level downward adjustment for acceptance of responsibility (U.S.S.G. § 3E1.1), the parties agreed to a Total Offense Level (TOL) of 24. The parties did not stipulate to a Criminal History Category (CHC) in the Plea Agreement.

[4] Fuentes specifically notes in his brief that he is requesting concurrency only with the sentence for the March 1 firearm offense, not his 10-month Revocation Sentence.

recommendations. Finally, it contained a waiver of appeal provision (the "Waiver Provision" that we'll get to in a minute).

Before accepting Fuentes's guilty plea, the district court assured itself of Fuentes's competency and explained to him all the ramifications of pleading guilty, such as waiving his right to a trial. The judge next recounted the factual events leading to Counts One and Three, and he reconfirmed with Fuentes his decision to plead guilty to those Counts. He then inquired into Fuentes's understanding of both the Sentencing Guidelines and of the judge's absolute discretion to depart from those Guidelines in sentencing Fuentes. After directing the government to spell out the factual events leading to the Counts One and Three charges, and after again confirming Fuentes's decision to plead guilty, the judge accepted the plea and adjudged Fuentes guilty. Lastly, the district judge ordered probation to prepare a Pre-Sentencing Report ("PSR") "to assist in" sentencing which, weeks later, it did.

Here's how the PSR determined Fuentes's sentencing calculus. It laid out the details of Fuentes's background and offenses and assessed a TOL of 24, just as in the Plea Agreement, and a CHC of IV based on eight criminal history points: three for each prior conviction (Case Nos. 12-093 and 17-148; U.S.S.G. § 4A1.1(a)) and two for committing the robberies while serving his term of supervised release for his 2012 offense (U.S.S.G.

§ 4A1.1(d)).  The PSR also noted that in an interview on June 10, 2018, when Fuentes accepted responsibility for the robberies, he also made a statement that "the firearm he possessed [during the Humacao Robberies was] the same that he was charged with in [Case No.] 17-148,"[5] the March 1 firearm offense.

The PSR further set forth the maximum term of imprisonment -- 20 years -- for Counts One and Three, and based upon a TOL of 24 and CHC of IV, determined the Guidelines imprisonment range was 77-96 months.  The PSR then accounted for how the Plea Agreement benefitted Fuentes, as he received:  a three-level reduction in his offense level by pleading guilty; a dismissal of the remaining counts; and a joint recommendation of imprisonment sentences of 12 years on each of the pled-to counts, to be served concurrently with each other.  The report also noted that had Fuentes been convicted for Counts Two and Four, he would have been subject to a minimum imprisonment of 25 years on each on those counts, to be served consecutive to each other, for a total minimum imprisonment of 50 years, to be then followed by a consecutive term of imprisonment for Counts One and Three.

---

[5] The criminal complaint for Case No. 17-148, the March 1 firearm offense, includes a statement from Fuentes that he had purchased the gun of which he was in possession "after he got out of jail months ago," presumably after completing the 60 months incarceration for Case No. 12-093 and before the Humacao Robberies and the March 1 firearm offense.  This complaint was not presented to the district court.

A few weeks before sentencing, Fuentes notified the government by email of his objections to the PSR, including as relevant here, "Objection 1: Conviction in Criminal Number 17-148 [the March 1 firearm offense] should be considered relevant conduct because the firearm for which he was charged in the aforementioned case is the same used to commit the [Humacao Robberies]." In response Probation filed an Addendum to the PSR the week before the sentencing hearing, stating "[a]t this time, there is no evidence to support that both cases involve the same weapon. As such, cannot be considered relevant conduct in the case." Why Fuentes wanted his March 1 firearm offense to be considered "relevant conduct" to the Humacao Robberies will soon become clear.

At the very beginning of the sentencing hearing held on September 11, 2018, Fuentes's counsel raised this "relevant conduct" issue:

> **THE COURT**: Ms. Carrillo, is there anything you would like to say on behalf of Mr. Fuentes before I pronounce sentence?
> **FUENTES'S COUNSEL**: Your Honor, we just ask the Court -- there is a PSR, which I believe that encompasses all the information this Court needs at the time of imposing sentence. There is only an issue that is pending as to the relevant conduct, to see if it's possible this Court can sentence this Defendant concurrent to the [40 months] sentence that he is right now serving, possession of a firearm, which was a sentence that was imposed on September 2017. At that point in time, this Defendant

- 8 -

was arrested with a Glock 26, which was the same firearm that was used in --

**THE COURT**: We really don't know that.

**FUENTES'S COUNSEL**: Well, Your Honor, we have a statement of the Defendant that he has informed the Court and myself that it was his firearm. So we do have --

**THE COURT**: The probation officer wasn't able to corroborate that.

**FUENTES'S COUNSEL**: But the Government has information that at least the weapon that he used on the commission of this offense was a Glock 26. We do not, obviously --

**THE COURT**: Why should it be relevant conduct if just using the same firearm?

**FUENTES'S COUNSEL**: Well, Your Honor, it was a possession at that time. What we are asking at this point -- we are have an agreement --

**THE COURT**: The 924(c) counts [Counts 2 and 4] in this case are being dismissed.

**FUENTES'S COUNSEL**: Yes, Your Honor. We do understand, but there is two point enhancement for the possession of -- the use of a firearm in this case.

**THE COURT**: Exactly. He used it.

**FUENTES'S COUNSEL**: That is correct, Your Honor. And --

**THE COURT**: It doesn't really matter if it was the same firearm that he used before.

**FUENTES'S COUNSEL**: Your Honor, what we are asking is that, since this is a case in which there is a plea agreement of 12 years, which is lengthy sentence, and he is already serving an extra time, we just ask the Court to sentence this concurrent --

**THE COURT**: Well, that's different. You are requesting concurrence.

**FUENTES'S COUNSEL**: Yes, that is what we are requesting, Your Honor.

**THE COURT**: Not necessarily because it was the same firearm or because it was relevant conduct. You are just requesting concurrence.

**FUENTES'S COUNSEL**: Yes. We are requesting concurrence because of the kind of firearm that was used. It was the same. But, Your Honor, I really don't care if it's as to the criminal history, the points of relevancy. I

am just asking that this be sentenced concurrent. And based on the plea agreement, we, the Government and I, agree that I could request such sentence.

The government then engaged:

> **GOVERNMENT**: Your Honor, with respect to the relevant conduct issue and to sister counsel's argument, the information that the Government has is that the gun that the Defendant used to commit the robberies was a Glock, Model 26, which was provided to him by someone in order to commit the robbery, and that it was a gun from a criminal organization, what's often called a gun from *el caserio*, which is handed around in order to commit crimes.
> **THE COURT**: Probably rented.
> **GOVERNMENT**: We do not know whether it was the same gun because it was not seized. The robbery was committed early February, and he was arrested in March. So we do not know whether the gun that he had on him when he was arrested in March was the same gun.

After this, and at the court's invitation, Fuentes made his allocution (i.e., made his formal statement to the court conveying any information that could assist in sentencing), expressing his remorse and regret, after which the court proceeded with sentencing. The judge accepted the PSR's and Plea Agreement's TOL of 24 and CHC of IV, explained why he did so and found the Guidelines imprisonment range to be 77-96 months. He then turned to the 18 U.S.C. § 3553(a) considerations, accounting for Fuentes's personal and medical history, and clarified why he was accepting the parties' recommendation for an above-Guidelines sentence:

> The Court will vary from the advisory guidelines in order to reflect the seriousness

of the offenses, based on conduct dismissed as part of the plea agreement, conduct that did not enter into the determination of the applicable guideline range, pursuant to the provisions of sentencing guideline section 5K2.21. In addition to the counts of conviction, Mr. Fuentes was also charged with two counts of violation of being in possession of a firearm in furtherance of a drug trafficking crime, and one count of being a felon in possession of a firearm. These counts will be dismissed pursuant to the plea agreement. The Court finds that the sentence to which the parties agreed reflects the seriousness of the offense, promotes respect for the law, protects the public from further crimes by Mr. Fuentes, and addresses the issues of deterrence and punishment.

The district court meted out 144 months each on Counts One and Three, "to be served concurrently with each other, but consecutively to the sentence imposed by Judge Gelpi in Criminal Case No. 17-148 and the revocation sentence imposed by Judge Cerezo in Case No. 12-093."

Unhappy with the application of a consecutive sentence, Fuentes timely appeals here and requests a remand for resentencing before a different judge.[6]

**ANALYSIS**

### What and How to Review

On appeal, Fuentes argues that his sentence was procedurally and substantively unreasonable. The two purported

---

[6] Given our affirmation of Fuentes's sentence his remand request is moot.

procedural errors are: 1) his sentence's consecutive, rather than concurrent, application to his sentence for the March 1, 2017 firearm offense, and 2) that his CHC was calculated to be IV, rather than III, leading to "an incorrect guideline imprisonment range which should have been 63-78 months instead of 77-96 months." And Fuentes argues that his sentence was substantively unreasonable because of the "magnitude" of the district court's purported procedural sentencing error.

Before we jump into the merits of Fuentes's arguments, we must first address the metaphorical elephant in the Plea Agreement -- at least when it comes to an appeal of a sentence subject to such an agreement: the Waiver Provision. Generally, "[s]uch a provision forecloses appellate review of many claims of error." United States v. Chambers, 710 F.3d 23, 27 (1st Cir. 2013) (citing United States v. Nguyen, 618 F.3d 72, 74–76 (1st Cir. 2010); United States v. Gil-Quezada, 445 F.3d 33, 36–39 (1st Cir. 2006)). But the government agrees with Fuentes and concedes, for reason unimportant to this appeal, that the Waiver Provision in Fuentes's Plea Agreement does not foreclose his ability to appeal the consecutive nature of his sentence.

The parties disagree, however, as to whether the Waiver Provision forecloses Fuentes's ability to now raise his secondary argument that his sentence was procedurally unreasonable because the district court "improperly increased Fuentes's[] criminal

history category from III to IV which also created an incorrect guideline imprisonment range which should have been 63-78 months instead of 77-96 months." Fuentes argues that the Waiver Provision does not foreclose appeal of this argument either, because the same cause that gave rise to the first purported error (that the sentence was applied consecutively) begot the secondary one -- that is, the court's failure to find the March 1 firearm offense to be "relevant conduct" to the Humacao Robberies led to the consecutive sentence *and* the improper CHC. The government disagrees that Fuentes can now appeal the district court's CHC determination for three reasons: 1) the Plea Agreement's Waiver Provision wholesale forecloses Fuentes's CHC argument; 2) Fuentes explicitly relinquished his CHC claim in front of the district court at sentencing; and 3) Fuentes fails to present on appeal any cognizable analysis that the court improperly applied the Guidelines.

We agree with the government's first argument and therefore need not opine on the last two. We elaborate some on the first: Fuentes forsook his responsibility to demonstrate that the Waiver Provision does not apply to his CHC argument when he provided neither case law nor factual support for this contention in his opening brief. And so "[w]here, as here, the defendant simply ignores the waiver and seeks to argue the appeal as if no waiver ever had been executed [as to the CHC contention], he

- 13 -

forfeits any right to contend either that the waiver should not be enforced or that it does not apply."  United States v. Miliano, 480 F.3d 605, 608 (1st Cir. 2007); see United States v. Colón-Rosario, 921 F.3d 306, 310 (1st Cir. 2019).[7]  We need say no more and move onto our assessment of Fuentes's only reviewable argument.

**Procedural Reasonableness**

Fuentes says his sentence is procedurally unreasonable because it runs consecutive to, rather than concurrent with, his sentence for the March 1, 2017 firearm offense.  Before getting into the nitty gritty of the argument, we elucidate the lens

---

[7] The court can, in its discretion, "forgive a defendant's failure to brief the reasons why a waiver should not be construed to bar an appeal -- but that discretion should be exercised only when doing so is necessary in order to avoid a clear and gross injustice."  Miliano, 480 F.3d at 608.  Such cases are rare, id., and this is clearly not such a case:  (1) the Plea Agreement signed by Fuentes contains a "clear statement elucidating the waiver and delineating its scope," United States v. Villodas-Rosario, 901 F.3d 10, 15 (1st Cir. 2018) (quoting United States v. Teeter, 257 F.3d 14, 24 (1st Cir. 2001)); (2) "the district court ensure[d] that '[Fuentes] freely and intelligently agreed to waive h[is] right to appeal h[is] forthcoming sentence' by inquiring 'specifically at the change-of-the-plea hearing into any waiver of appellate rights,'" id.; see also Transcript of Change of Plea Hearing at 12, United States v. Freddie A. Fuentes-Moreno, No. 17-CR-167 (FAB) (D. P.R. June 11, 2018), ECF No. 178 ("**THE COURT:** Do you understand that if I do sentence you according to the terms, conditions, and recommendations contained in the plea agreement, you waive and give up your right to appeal your sentence and the judgment in the case? **DEFENDANT FUENTES[]:** Yes."); and (3) "the denial of the right to appeal would not 'work a miscarriage of justice,'" id.; see also United States v. Calderón-Pacheco, 564 F.3d 55, 59 (1st Cir. 2009).

- 14 -

through which we will review this argument -- that is, what standard of review this court will apply.

Generally, courts of appeals review "[p]reserved claims of sentencing error" for an abuse of discretion. United States v. Soto-Soto, 855 F.3d 445, 448 (1st Cir. 2017). But the government contends Fuentes did not preserve his arguments below and therefore that they should be reviewed only for plain error. See id. Because Fuentes loses even under the more defendant-friendly standard, we opt to bypass the issue of preservation and review for abuse of discretion. See United States v. Nieves-Mercado, 847 F.3d 37, 41 (1st Cir. 2017) ("The government contends that the plain error standard applies to certain of Nieves's arguments on appeal, but we sidestep that question because Nieves's arguments fail under even the more favorable abuse of discretion standard."); United States v. Figueroa-Figueroa, 791 F.3d 187, 190–91 (1st Cir. 2015).

Reviewing a sentencing determination "under [the abuse of discretion] standard generally involves a two-step process: First, we determine whether the district court committed procedural error. Second, if there was no procedural error, we determine whether the sentence was substantively reasonable." United States v. Maldonado-Escarfullery, 689 F.3d 94, 97 (1st Cir. 2012) (citing Gall v. United States, 552 U.S. 38, 51 (2007)); United States v. Ruiz-Huertas, 792 F.3d 223, 226 (1st Cir. 2015). That said, "our abuse of discretion standard in this context [i]s

'multifaceted,' as we apply clear error review to factual findings, de novo review to interpretations and applications of the guidelines, and abuse of discretion review to judgment calls." Nieves-Mercado, 847 F.3d at 42 (citing United States v. Serunjogi, 767 F.3d 132, 142 (1st Cir. 2014)).

What underlies Fuentes's assertion that his sentence is procedurally unreasonable because it should have been a concurrent rather than a consecutive sentence is one singular decision by the district court:  that it did not find Fuentes had used the same gun in his March 1 firearm offense as in the Humacao Robberies. Fuentes argues that this misstep had a ripple effect which led the court to not have deemed the March 1 firearm offense "relevant conduct" to the Humacao Robberies, and, in turn, this "denial of relatedness" caused the district court to abuse its discretion when it imposed the consecutive sentence.  We review that alleged failure -- the district court's factual finding -- for clear error, id., remembering that a "significant procedural error" arises when a district court "select[s] a sentence based on clearly erroneous facts" or "[improperly calculates] the Guidelines range." United States v. Sayer, 916 F.3d 32, 37 (1st Cir. 2019) (quoting Gall, 552 U.S. at 51).  As we'll see, neither arises here.

Before we delve deeply into Fuentes's argument, we take a quick detour to explain how Fuentes connects the U.S. Sentencing Guidelines dots to get from the alleged use of the same gun in two

different offenses to the supposed compelled imposition of a concurrent sentence. From there we will turn to an analysis of the district court's factual determination and then close out our discussion with an analysis of the substantive reasonableness of the sentence.

*The Sentencing Guidelines*[8]

Fuentes first points to U.S.S.G. § 1B1.3(1) for its definition of "relevant conduct." <u>United States</u> v. <u>Santiago-Burgos</u>, 750 F.3d 19, 24 (1st Cir. 2014). U.S.S.G. § 1B1.3(a)(1)-(3) establishes "relevant conduct" as:

> (1) (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
> > (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were—
> > > (i) within the scope of the jointly undertaken criminal activity,
> > > (ii) in furtherance of that criminal activity, and
> > > (iii) reasonably foreseeable in connection with that criminal activity; that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of

---

[8] The district court applied the November 1st, 2016 Edition of the Sentencing Guidelines "because the Sentencing Commission did not promulgate any new amendments to become effective on November 1, 2017."

- 17 -

> attempting to avoid detection or
> responsibility for that offense;
> (2) *solely with respect to offenses of a*
> *character for which § 3D1.2(d)* would require
> grouping of multiple counts, all acts and
> omissions described in subdivisions (1)(A) and
> (1)(B) above *that were part of the same course*
> *of conduct or common scheme or plan as the*
> *offense of conviction;*
> (3) all harm that resulted from the acts and
> omissions specified in subsections (a)(1) and
> (a)(2) above, and all harm that was the object
> of such acts and omissions[.]

U.S.S.G. § 1B1.3(a)(1)-(3) (emphasis added). The Commentary to this section sheds more light on the emphasized text.[9] See United States v. McElroy, 587 F.3d 73, 88 (1st Cir. 2009) ("In determining whether state tax evasion constitutes relevant conduct, we look to the commentary to § 1B1.3.").

The reference to U.S.S.G. § 3D1.2(d) in U.S.S.G. § 1B1.3(1) draws us to look there:

> All counts *involving substantially the same*
> *harm* shall be grouped together into a single
> Group. Counts involve substantially the same
> harm within the meaning of this rule: . . .
> (d) When the offense level is determined

---

[9] To qualify as part of a same "common scheme or plan," the acts "must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*." U.S.S.G. § 1B1.3, cmt. n.5(B)(i). Where the offenses do not qualify as part of a common scheme or plan, they "may nonetheless qualify as part of the same course of conduct if they are sufficiently . . . related" as to conclude "they are part of a single episode, spree, or ongoing series of offenses." Id. at cmt. n.5(B)(ii). Factors used in making this course of conduct determination include "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." Id.

- 18 -

largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

U.S.S.G. § 3D1.2(d) (emphasis added).[10]

Fuentes argues that the district court should have read these Sentencing Guidelines provisions together to deem the March 1 firearm offense "relevant conduct" to the Humacao Robberies, since, in his mind, the (allegedly) same gun "was singular as to both offenses and constituted 'part of the same conduct or common scheme or plan as the offense of conviction.'" Fuentes then argues that finding the March 1 firearm offense to be "relevant conduct" to the Humacao Robberies would trigger an application of U.S.S.G § 5G1.3(b)[11] to compel the instant sentence to run concurrent with

---

[10] The government points out that Fuentes's citation to U.S.S.G. § 3D1.2(c), in addition to U.S.S.G. § 3D1.2(d), in his opening brief is inappropriate because U.S.S.G. § 1B1.3(a)(1)-(3) does not, in fact, reference that subsection. Since Fuentes provides no argument as to why 3D1.2(c) is relevant in this context, we need not consider it. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

[11] That guideline reads:

If . . . a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct), the sentence for the instant offense shall be imposed as follows: (1) the court shall adjust the sentence for any period of imprisonment

- 19 -

the "undischarged" sentence (for the March 1 firearm offense). U.S.S.G § 5G1.3(b).

The government counters with its own Guidelines arguments:  first, that Fuentes waived his right to assert the application of U.S.S.G. § 5G1.3 because he failed to raise it at sentencing, and even if he did not waive that argument, it should be reviewed only for plain error.  Second, that because robbery is not an offense eligible for grouping with a prior felon-in-possession offense under U.S.S.G. § 3D1.2(d), the March 1 firearm offense cannot be "relevant conduct" to the Humacao Robberies; and even if the robberies were eligible for such grouping, they did not occur, as required by U.S.S.G. § 1B1.3, in preparation, during the commission, or in the course of attempting to avoid detection or responsibility, for the March 1 firearm offense, and therefore the latter is not "relevant conduct" to the former.

*Our Take*

Although we have considered the arguments Fuentes advances on appeal, in the end, his relevant conduct contentions rise or fall on our resolution of one issue:  whether the district

---

already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

court clearly erred in its fact finding. The "court's application of U.S.S.G. § 1B1.3 depend[s] on an evaluation and weighing of the factual details." United States v. McVey, 752 F.3d 606, 610 (4th Cir. 2014); see also United States v. Montalvo-Febus, 930 F.3d 30, 33-35 (1st Cir. 2019).

*The District Court's Factual Determination*

Fuentes, as defendant, bore the burden of demonstrating the facts necessary for the district court to conclude that the March 1 firearm offense was relevant conduct to the Humacao Robberies. See United States v. Rentas-Muñiz, 887 F.3d 1, 4 (1st Cir. 2018); Santiago-Burgos, 750 F.3d at 24; United States v. Carrasco-De-Jesús, 589 F.3d 22, 28 (1st Cir. 2009) ("A defendant bears the burden of proving the applicability of a guideline provision that will ameliorate [his] sentence."); United States v. Schrode, 839 F.3d 545, 551 (7th Cir. 2016) (explaining that it is "the defendant's burden to demonstrate that the conduct which led to his [previous] sentences is relevant conduct to his [instant] offense"). To carry this burden, Fuentes, as noted, offered just one fact: that he had used the same gun for the Humacao Robberies as for the March 1 firearm offense.[12] Fuentes argues that he met

---

[12] During sentencing the district judge himself asked: "[w]hy should it be relevant conduct if just using the same firearm?" The parties offered no answer at the time (nor do they now), and because we can resolve this issue on other grounds, we need not ponder this question here.

his burden of proving this fact and the district court was wrong to find otherwise.  The government disagrees.

Fuentes urges that two separate statements he made to law enforcement in connection with both offenses reinforce each other to prove that he used the same gun for both.  The first is that "when he was arrested on March 1, 2017 with the Glock pistol object of indictment in [Case No.] 17-148 . . . Fuentes[] . . . informed [the agents] that[] 'he was the owner of [the] Glock pistol . . . .  When asked for more information about how he had obtained the firearm, Fuentes[] stated he had bought the pistol after he got out of jail months ago.'"[13]  Fuentes argues that "[w]hat made [this statement] particularly trustworthy [wa]s the fact that when he was detained on March 1, 2017 . . . he had not even been identified nor indicted for the [Humacao Robberies]," giving him "no reason to lie at that time or to make up a story about when he purchased the firearm."  Tracing Fuentes's logic, we understand he believes that since in this statement he owned up to purchasing the gun used in the March 1 firearm offense "after he got out of jail months ago," he must have used that same gun during the February Humacao Robberies.

---

[13] This complaint and particular statement were not presented to the district court at all.  See supra note 5.  Because we find, even if this complaint were properly in the record for our review, that Fuentes's argument would fail, we bypass this issue.

The second statement involves Fuentes's "Pre-Sentence Report interview in [the Humacao Robberies], [during which] Fuentes[] informed the probation officer that the pistol he had used [during the Humacao Robberies] [wa]s the same that he was charged with in [Case No.] 17-148 [the March 1 firearm offense]." Fuentes argues that his "assertion[s] had sufficient indicia of reliability," and that the district court was wrong to "requir[e] the self-made rule of corroboration" when it noted at sentencing that "[t]he probation officer wasn't able to corroborate" that the same gun had been used.

What Fuentes misses, however, is that "a sentencing court has wide discretion to decide whether particular evidence is sufficiently reliable to be used at sentencing." Montalvo-Febus, 930 F.3d at 35 (quoting United States v. Cintrón-Echautegui, 604 F.3d 1, 6 (1st Cir. 2010)); see also United States v. Mills, 710 F.3d 5, 16 (1st Cir. 2013) ("the court has considerable leeway in deciding whether particular evidence is reliable enough for sentencing purposes"). Beyond the statements Fuentes points to, he presented no other evidence that the same gun was used. Fuentes complains that the government's inability to verify the identity of the gun should not damn his case, but other than his bare statements, he provides no other affirmative confirmation -- physical, testing, or otherwise -- that it was the same gun. The burden was on Fuentes, and we cannot say the district court clearly

erred in not buying his story. United States v. Torres-Landrúa, 783 F.3d 58, 64 (1st Cir. 2015) ("We have recognized that the district court has 'almost unfettered discretion in determining what information it will hear and rely upon in sentencing deliberations,' and to decide 'not only the relevance but also the reliability of the sentencing information.'" (quoting United States v. Geer, 923 F.2d 892, 897 (1st Cir. 1991) (internal quotation marks and citations omitted))); United States v. Gallardo-Ortiz, 666 F.3d 808, 811 (1st Cir. 2012) ("the sentencing judge may consider all relevant information that has 'sufficient indicia of reliability to support its probable accuracy' . . . the sentencing court 'has wide discretion to decide whether particular evidence is sufficiently reliable to be used at sentencing.'" (quoting Cintrón–Echautegui, 604 F.3d at 6)); Carrasco-De-Jesús, 589 F.3d at 28 ("A lack of evidence on a critical point is an insurmountable obstacle for the party who has the burden of proof on that point."); see also Santiago-Burgos, 750 F.3d at 24; United States v. Cruz-Rodríguez, 541 F.3d 19, 36 (1st Cir. 2008).

Therefore, viewing the record as a whole and finding no clear error, it follows that the district court did not abuse its discretion in imposing a consecutive sentence. See Figueroa-Figueroa, 791 F.3d at 191–93; United States v. Freeman, 788 F. App'x 7, 7-8 (D.C. Cir. 2019).

## Substantive Reasonableness

Fuentes preserved his "appellate challenge to the substantive reasonableness of [his] sentence," Holguin-Hernandez v. United States, 140 S. Ct. 762, 766–67 (2020), when he advocated for a concurrent sentence in front of the district court, and so we review here for abuse of discretion. Id. Both parties here agree that "the inquiry for substantive reasonableness is whether the sentencing rationale is plausibly reasoned and resulted in a defensible outcome." United States v. Alejandro-Rosado, 878 F.3d 435, 440 (1st Cir. 2017).

But Fuentes's argument that his sentence was substantively unreasonable wears thin. From what we can understand in his opening brief, Fuentes claims that since the above-Guidelines 144-month sentence accounted for the dismissed counts that dealt with firearm possession (Counts Two, Four, and Five), imposing the sentence consecutively, rather than concurrently, to Fuentes's March 1 firearm offense was substantive error. Essentially, he argues that the "magnitude" of the district court's procedural sentencing error "should lead [this court] to conclude that substantive sentencing error also occurred."

The government, of course, thinks otherwise and that Fuentes's 144-month consecutive sentence was substantively reasonable, since it: 1) was well below the 20-year statutory maximum for the robbery offenses; 2) matched what the parties had

agreed to in the Plea Agreement; and 3) was supported by a plausible and defensible rationale and sufficient explanation from the district court. The government notes that the district court in imposing the sentence had "properly relied on the nature, seriousness and circumstances of the offense, the significant deal obtained with the [P]lea [A]greement, Fuentes's lack of respect for the law, the need for deterrence, and the need to protect the public from further crimes by Fuentes."

"As a general matter, a reviewing court is not at liberty to second-guess a sentencing court's reasoned judgments about matters committed to the sentencing court's discretion." United States v. Matos-de-Jesús, 856 F.3d 174, 179 (1st Cir. 2017). "Consistent with this principle, the substantive reasonableness of a sentence turns on whether the sentencing court articulated 'a plausible sentencing rationale' and reached 'a defensible result.'" Id. (citing United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008)). "There is more than one reasonable sentence in virtually any case, and we will vacate a procedurally correct sentence as substantively unreasonable only if it lies outside the expansive boundaries that surround the universe of reasonable sentences." Id. (internal quotations omitted). "This is a highly deferential standard of review, and it applies full-bore to non-guideline sentences." Id. (citing United States v. Vargas-García, 794 F.3d 162, 167 (1st Cir. 2015)).

We conclude that the district court provided "a plausible sentencing rationale and a defensible result." Nieves-Mercado, 847 F.3d at 42 (citing Martin, 520 F.3d at 96). The district court spelled out its rationale during sentencing:

> The Court will vary from the advisory guidelines in order to reflect the seriousness of the offenses, based on conduct dismissed as part of the plea agreement, conduct that did not enter into the determination of the applicable guideline range, pursuant to the provisions of sentencing guideline section 5K2.21. In addition to the counts of conviction, Mr. Fuentes was also charged with two counts of violation of being in possession of a firearm in furtherance of a drug trafficking crime, and one count of being a felon in possession of a firearm. These counts will be dismissed pursuant to the plea agreement. The Court finds that the sentence to which the parties agreed reflects the seriousness of the offense, promotes respect for the law, protects the public from further crimes by Mr. Fuentes, and addresses the issues of deterrence and punishment.

This articulation, combined with a recitation of Fuentes's personal characteristics,[14] allows us to determine that the

_____

[14] The district court recited:

> Mr. Fuentes is 27 years old. He has not completed high school and was unemployed when he committed his offenses. He has one son. He is physically healthy, but was receiving mental health treatment while on supervised release . . . family members have indicated that Mr. Fuentes may suffer from attention deficit hyperactivity disorder. There is a history of schizophrenia in his family. He has reported history of using and

sentence was "plausibly reasoned."  See Alejandro-Rosado, 878 F.3d at 441 ("Where district courts stress the factors that lead to its sentence and explain the purposes for the sentence, we have upheld its reasoning.").  The sentence is further "defensible" where, as here, the imposed sentence is identical to that agreed-upon by the parties in the Plea Agreement, which itself notes that Fuentes was "aware that his sentence [was] within the sound discretion of the sentencing judge . . . [and] that the [district court] [was] not . . . bound by the [Plea Agreement] or the sentencing calculations and recommendations contained [t]herein."[15]  See, e.g., United States v. Vega-Salgado, 769 F.3d 100, 103 (1st Cir. 2014); cf. United States v. Bermúdez-Meléndez, 827 F.3d 160, 166-67 (1st Cir. 2016) (finding substantively reasonable a sentence that was a "modest increase over the sentence [] that the appellant himself thought condign").

When it comes down to it, Fuentes's "only argument as to substantive unreasonableness is that his sentence was 'marred' by [a] procedural error," Montalvo-Febus, 930 F.3d at 35 (citing United States v. Pedroza-Orengo, 817 F.3d 829, 837 (1st Cir. 2016)) -- that the district court did not find that Fuentes had used the

---

experimenting with cocaine, and with Percocet and Xanax pills without a prescription.

[15] The parties do not dispute that the plea colloquy sufficiently confirmed Fuentes's comprehension of this aspect of the Plea Agreement.

same gun in the March 1 firearm offense as in the Humacao Robberies, thereby declining to deem the March 1 firearm offense "relevant conduct."  But that is a "premise we have [already] rejected."  Id.  And "[b]eyond that, the facts of this case fully justify the sentence, which 'resides within the expansive universe of reasonable sentences.'"  Id.

**CONCLUSION**

Having resolved Fuentes's core complaint in the government's favor, we find that the district court did not abuse its discretion in imposing a consecutive sentence.  Affirmed.